620 So.2d 153 (1993)
PAROLE COMMISSION, Petitioner,
v.
Jerry T. LOCKETT, Judge, etc., Respondent.
No. 80264.
Supreme Court of Florida.
April 22, 1993.
Rehearing Denied June 23, 1993.
*154 William L. Camper, Gen. Counsel, Florida Parole Com'n, Tallahassee, for petitioner.
Jerri A. Blair of Blair & Cooney, P.A., Tavares, for respondent.
J. Hardin Peterson, Gen. Counsel, Tallahassee, on behalf of Lawton Chiles, as Governor, Peter Antonacci, Deputy Gen. Counsel, Tallahassee, on behalf of Robert A. Butterworth, as Atty. Gen., Phyllis Slater, Gen. Counsel, Tallahassee, on behalf of Jim Smith, as Secretary of State, Sydney H. McKenzie, III, Gen. Counsel, Tallahassee, on behalf of Betty Castor, as Com'r of Educ., Donald A. Dowdell, Director, Div. of Legal Services, Office of the Treasurer, Tallahassee, on behalf of Tom Gallagher, as Treasurer, and Larry Helm Spalding, Capital Collateral Representative and M. Elizabeth Wells, Asst. CCR, Office of the Capital Collateral Representative, Tallahassee, on behalf of James Aren Duckett, a death-sentenced Florida prisoner, Intervenors.
OVERTON, Justice.
The Florida Parole Commission petitions this Court for a writ of prohibition to prohibit a circuit court judge in a rule 3.850[1] proceeding from requiring the Parole Commission to produce certain investigative files compiled by the Commission on behalf of the Governor and Cabinet acting in their capacity as the Board of Executive Clemency. This is a separation of powers issue.[2] The question is whether a legislative act can take precedence over a rule of the Governor and Cabinet adopted to implement their constitutional executive clemency powers and whether the judicial branch can interfere with the clemency process by ordering the Parole Commission to comply with the statute. We have jurisdiction. Art. V, § 3(b)(7), Fla. Const.
For the reasons expressed, we find that the clemency process is derived solely from the constitution and is strictly an executive branch function, and that, consequently, the Legislature, by statute, may neither preempt nor overrule the clemency rules without violating the separation of *155 powers doctrine expressly set forth in article II, section 3, of the Florida Constitution.
At the outset, it is important to understand that the files and records of the Florida Parole Commission, maintained as a result of their statutory duties and responsibilities, are not in issue in these proceedings. The only files in issue in this proceeding are clemency files and records maintained by the Florida Parole Commission for the Board of Executive Clemency.
This proceeding commenced as part of a rule 3.850 proceeding initiated by James Duckett, a prisoner under sentence of death. The Office of the Capital Collateral Representative, in representing Duckett in a Florida Rule of Criminal Procedure 3.850 proceeding in the Circuit Court of the Fifth Judicial Circuit, filed a motion requesting the trial judge to direct the Parole Commission to produce clemency files and records concerning Duckett, as required by the Public Records Law, chapter 119, Florida Statutes (1991). Neither the Governor and Cabinet nor the Parole Commission was a party to that proceeding. The trial court, as a result of the motion, entered an order which directed the Parole Commission to provide "all files and documents in the above-captioned matter to counsel or the defendant, the office of Capital Collateral Representative, within fifteen days of receipt of this order." The order also expressly stated: "The Florida Parole Commission shall have no right to respond to this order in the circuit court." The Commission did, however, file a motion for rehearing and/or a motion to vacate and a motion to stay. The trial court, after this petition for a writ of prohibition was filed in this Court, denied the motion.
This Court has allowed Duckett to intervene in support of Circuit Judge Lockett and has also allowed Governor Lawton Chiles, Secretary of State Jim Smith, Attorney General Bob Butterworth, State Treasurer Tom Gallagher, and Commissioner of Education Betty Castor, sitting as the clemency board, to intervene in this proceeding on behalf of the Florida Parole Commission.
Article IV, section 8(a), of the Florida Constitution creates the clemency board, and states:
Except in cases of treason and in cases where impeachment results in conviction, the governor may, by executive order filed with the secretary of state, suspend collection of fines and forfeitures, grant reprieves not exceeding sixty days and, with the approval of three members of the cabinet, grant full or conditional pardons, restore civil rights, commute punishment, and remit fines and forfeitures for offenses.
The Governor and Cabinet, sitting as the clemency board, has adopted Rules of Executive Clemency in Florida. The rules pertinent to the issue in this proceeding are rules 15 and 16, which provide as follows:
15. Commutation of Death Sentences
This Rule applies to all cases where the sentence of death has been imposed. The Rules of Executive Clemency are inapplicable to cases where inmates are sentenced to death, except Rules 1, 2, 3, 15 and 16.
A. In all cases where the death penalty has been imposed, the Florida Parole Commission shall conduct a thorough and detailed investigation into all factors relevant to the issue of clemency. The investigation shall include (1) an interview with the inmate (who may have legal counsel present) by at least three members of the Commission; (2) an interview, if possible, with the trial attorneys who prosecuted the case and defended the inmate; and (3) an overview, if possible, with the victim's family. The investigation shall begin immediately after the Commission receives a written request from the Governor and shall be concluded within 90 days of the written request. After the investigation is concluded, the members of the Commission who personally interviewed the inmate shall prepare and issue a final report on their findings and conclusions. The report shall include any statements and transcripts that were obtained during the investigation. The report shall contain a detailed summary from each member of the Commission who interviewed the inmate on *156 the issues presented at the clemency interview. The report shall be forwarded to all members of the Clemency Board within 120 days of the written request from the Governor for the investigation.
B. After the report is received by the Clemency Board, the Coordinator shall place the case on the agenda for the next scheduled meeting or at a specially called meeting of the Clemency Board, if, as a result of the investigation, any member of the Clemency Board requests a hearing within 30 days of receiving the report. Once the hearing is set, notice shall be given to the appropriate state attorney, attorney for the inmate, and the victim's family.
C. Notwithstanding any provision to the contrary in the Rules of Executive Clemency, in any case in which the death sentence has been imposed, the Governor may at any time place the case on the agenda and set a hearing for the next scheduled meeting or at a specially called meeting of the Clemency Board.
D. Upon request, a copy of the actual transcript of any statement or testimony of the inmate that are made part of the report shall be provided to the state attorney, attorney for the inmate, or victim's family. The attorney for the state or the inmate, the victim's family, the inmate, or any other interested person may file a written statement, brief or memorandum on the case up to 10 days prior to the clemency hearing, copies of which will be distributed to the members of the Clemency Board. The person filing such written information should provide 10 copies to the Coordinator of the Office of Executive Clemency.
E. Due to the sensitive nature of the information contained in the report, it shall be confidential. The report shall not be made available for public inspection or distribution and shall be made available only to the members of the Clemency Board and their staff to assist in determining the request for clemency.

F. At the clemency hearing for capital punishment cases, the attorneys for the state and the inmate may present oral argument each not to exceed 15 minutes. A representative of the victim's family may make an oral statement not to exceed 5 minutes.
G. If a commutation of the death sentence is ordered by the Governor with the approval of three members of the Clemency Board, the original order shall be filed with the Secretary of State, and a copy of the order shall be sent to the inmate, the attorneys for each side, a representative of the victim's family, the Secretary of the Department of Corrections and the sentencing judge.
16. Confidentiality of Records and Documents
Due to the nature of the information presented to the Clemency Board, all records and documents generated and gathered in the clemency process as set forth in the Rules of Executive Clemency are confidential and shall not be made available for inspection to any person except members of the Clemency Board and their staff. The Governor has the sole discretion to allow records and documents to be inspected or copied.
Fla. Admin. Code Ann.R. 27-app. (1992) (emphasis added).
The relevant provisions of chapter 119 read as follows:
119.01 General state policy on public records. 
(1) It is the policy of this state that all state, county, and municipal records shall at all times be open for a personal inspection by any person.
... .
119.011 Definitions.  For the purpose of this chapter:
(1) "Public records" means all documents, papers, letters, maps, books, tapes, photographs, films, sound recordings or other material, regardless of physical form or characteristics, made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency.
(2) "Agency" means any state, county, district, authority, or municipal officer, *157 department, division, board, bureau, commission, or other separate unit of government created or established by law and any other public or private agency, person, partnership, corporation, or business entity acting on behalf of any public agency.
(Emphasis added.) Judge Lockett and Mr. Duckett acknowledge that there is a prohibition against legislative or judicial encroachment upon the executive branch's clemency powers; that the Governor has the sole unrestricted and unlimited discretion to exercise the pardon powers; and that the Legislature and the judiciary are without authority to prescribe either the occasions for exercising the pardon power or the manner and procedure for its exercise. They argue, however, that, while the Governor and Cabinet are excluded from any control by the judiciary or the Legislature in their clemency function, the Parole Commission is subject to the powers of the judiciary and the Legislature because it was established by legislative act and is, therefore, an agency of the State.
The Parole Commission, the Governor, and the members of the Cabinet argue that these files were created while the Parole Commission was acting within the ambit of the clemency powers vested in the executive branch pursuant to article IV, section 8, of the Florida Constitution. The Commission argues that, since the files in question were created pursuant to the executive clemency powers, the trial judge's order in this instance would effectively overrule the rules of executive clemency, resulting in a violation of the separation of powers doctrine. We agree.
As acknowledged by Judge Lockett and Mr. Duckett, our constitution expressly vests the power to grant pardons and clemency solely with the executive branch. See Sullivan v. Askew, 348 So.2d 312 (Fla.), cert. denied, 434 U.S. 878, 98 S.Ct. 232, 54 L.Ed.2d 159 (1977); Singleton v. State, 38 Fla. 297, 21 So. 21 (1896). This Court has been very clear in construing the Governor's clemency powers and holding that this power is independent of both the Legislature and the judiciary. See Sullivan; In re Advisory Opinion to the Governor, 334 So.2d 561 (Fla. 1976); Turner v. Wainwright, 379 So.2d 148 (Fla. 1st DCA), aff'd, 389 So.2d 1181 (Fla. 1980). In In re Advisory Opinion to the Governor, we stated that the legislatively enacted Administrative Procedure Act, chapter 120, Florida Statutes (1975), would not apply to the exercise of the executive branch's clemency power, stating:
No aspect of clemency powers exist by virtue of a legislative enactment, and none could. These powers are "derived" solely from the Constitution. The exclusivity of the exercise of clemency powers by the executive branch is further buttressed in the areas under consideration by the procedural requirements of the Constitution itself. Where that document sufficiently prescribes rules for the manner of exercise, legislative intervention into the manner of exercise is unwarranted.
334 So.2d at 562 (footnote omitted). In Sullivan, 348 So.2d at 316, we stated that we would not "intrude on the proper execution of the executive [clemency] power."
In Turner v. Wainwright, the question of whether the Parole Commission could have two distinct responsibilities, one prescribed by the Legislature and the second prescribed by the Governor and the Cabinet, was directly addressed by the First District Court of Appeal. In that case, the issue was whether the Sunshine Law, section 286.011, Florida Statutes (1977), would apply to parole revocation meetings. The Parole Commission challenged the applicability of the Sunshine Law with regard to its parole function, asserting that the Legislature could not require parole revocation hearings to be open. The district court, in distinguishing between the parole function and the executive pardon power, found that the open meetings law applied, stating:
The historic and constitutional distinction between the executive's pardon power and its parole power decides this case. The pardon power rests upon "self-executing constitutional provisions," by which

*158 ... the people of this state chose to vest sole, unrestricted, unlimited discretion exclusively in the executive in exercising this act of grace. [Sullivan v. Askew, 348 So.2d 312, 315 (Fla. 1977)]
The parole power, on the other hand, is reposed only in "a parole or probation commission" which "may be created by law," and ... which is subject to all laws, substantive or procedural, addressed to it by the legislature.
Id. at 154 (emphasis added). We approved the district court's decision in Turner v. Wainwright, 389 So.2d 1181 (Fla. 1980).
The distinction articulated above between the executive's pardon power as set forth in the constitution and the parole powers of the Commission as granted by law decides this case also. We note that the Attorney General has stated that the Parole Commission, in conducting investigations and preparing reports for clemency proceedings, is functioning "as staff to and on behalf of the Governor on matters relating to clemency and the pardon power and not pursuant to the commission's statutorily prescribed parole authority." Op.Att'y Gen. Fla. 086-50 (1986).
Consistent with these views, we find that the Parole Commission is entitled in these circumstances to a writ of prohibition. To hold otherwise would allow the Legislature and the judiciary to encroach upon executive powers expressly granted by our constitution to the Governor and Cabinet.[3]See Askew; Turner. Accordingly, we conclude that the clemency investigative files and reports produced by the Parole Commission on behalf of the Governor and Cabinet relating to the granting of clemency are subject solely to the Rules of Executive Clemency.
We note, however, that, while these rules expressly make this sensitive information confidential, they also give to the Governor the sole authority for making such records public. We are disturbed that no attempt was made by the Capital Collateral Representative to request the Governor to exercise his authority either to make the records public or to allow the Capital Collateral Representative to examine them in camera with counsel for the State. We further note that the trial judge was not informed by the Capital Collateral Representative about the provisions of the Rules of Executive Clemency or the procedure in the rules for obtaining the clemency investigative files and reports produced by the Parole Commission for the Governor and Cabinet.
Accordingly, we grant the Commission's petition for a writ of prohibition without prejudice to Duckett to follow the procedure in the Rules of Executive Clemency for obtaining the information sought.
It is so ordered.
BARKETT, C.J., and McDONALD, SHAW, GRIMES and HARDING, JJ., concur.
KOGAN, J., dissents with an opinion.
KOGAN, Justice, dissenting.
The majority today elevates the Rules of Executive Clemency to constitutional stature, effectively incorporating them by reference into article IV, section 8 of the Florida Constitution. To my mind the sole issue is the text of the Constitution itself, not whatever gloss might have been added by the Executive. Nowhere does article IV, section 8 require or even suggest that clemency records must have the status of a high state secret.
Moreover, no sensible policy considerations require secrecy. There could be no more "encroachment" upon the executive prerogative by releasing clemency documents than there is when the public inspects the files of the Cabinet, this Court, the Legislature, or any state agency. All that will happen is that documents produced pursuant to executive powers will be more available for inspection. I find it difficult to believe that a mere release of documents alone somehow will subvert the *159 executive clemency power. For that reason, I would deny the writ.
NOTES
[1] Fla.R.Crim.P. 3.850.
[2] We note that the public records amendment to article I of the Florida Constitution, approved by the electorate on November 3, 1992, does not become effective until July 1, 1993, and is not an issue in this cause.
[3] We do not address the responsibility of the Governor or any governmental entity to provide a defendant with exculpatory evidence as constitutionally required by Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).