2004 SD 62

**John DOE, Jane Doe, John Doe # 2, and Others Similarly Situated, Applicants and Appellees,**

v.

**Chris NELSON, in his official capacity as the South Dakota Secretary of State, and the South Dakota Board of Pardons and Paroles, Respondents and Appellants.**

No. 22866.

Supreme Court of South Dakota.

Argued March 23, 2004.

Decided May 5, 2004.

Thomas K. Wilka of Hagen, Wilka & Archer, P.C., Sioux Falls, South Dakota, Attorneys for applicants and appellees.

Lawrence E. Long, Attorney General, Jeffrey P. Hallem, Assistant Attorney General, Pierre, South Dakota, Attorney for respondents and appellants.

Jon E. Arneson, Sioux Falls, South Dakota, for Amici Curiae.

GILBERTSON, Chief Justice.

[¶ 1.] Doe and other applicants (hereinafter Applicants) sought a writ of prohibition against Chris Nelson, the South Dakota Secretary of State (Secretary of State) and the South Dakota Board of Pardons and Paroles (Board), prohibiting the Secretary of State and Board from releasing the names contained in numerous sealed pardons in the Secretary's possession. The trial court granted the writ. On appeal, we focus not on the general broad Constitutional authority of the Governor to grant or deny pardons, but rather the narrow question of their status once the Governor has granted them. For the reasons set

forth herein, we reverse and remand with instruction to dissolve the writ.

## FACTS AND PROCEDURE

[¶ 2.] The facts in this case are not in dispute. In January of 2003, a representative of the Sioux Falls Argus Leader,[1] a newspaper, asked the Secretary of State for a list of individuals who were named in pardons filed with Nelson for the years 1995 though 2002. All of the pardons contained notation from the Governor indicating the pardons were sealed "pursuant to section 24–14–11 of the South Dakota Codified Laws."[2] The Secretary of State determined that approximately 279 pardons had been filed during that time period containing that language. Further research by the Secretary of State established that from November 1972 through July 17, 1984, no pardon contained any type of language sealing the pardon. From July 17, 1984 to January of 2003, nearly all, if not all pardons contained this type of sealing language.[3]

[¶ 3.] Prior to a response to the press request, the Secretary of State sought an opinion from the Attorney General as to the status of these 279 sealed pardons. In February of 2003, the Attorney General issued AGO 03–01 in which he concluded that those pardons granted by the Governor outside of the Board's involvement under SDCL ch. 24–14, could not be legally sealed under SDCL 24–14–11. The Attorney General concluded that these 279 pardons were records open for public inspection under SDCL 1–27–1.

[¶ 4.] Based on the opinion of the Attorney General, the Secretary of State announced he would consult with the Board to determine which pardons were not issued pursuant to SDCL ch. 24–14. When this was completed, the Secretary would then open to public inspection those pardons not issued per SDCL ch. 24–14 but instead issued directly under Article IV, Section 3 of the South Dakota Constitution.

[¶ 5.] Applicants state they are some of those who received their pardons directly under Article IV, Section 3, rather than under SDCL ch. 24–14. They filed this action seeking a writ of prohibition to prohibit the Secretary of State and Board from unsealing and allowing public inspection of records relating to those pardons. Based upon constitutional analysis, the trial court issued the writ. It concluded the 1972 amendments to Article IV, Section 3 gave the Governor exclusive constitutional authority to pardon, including the power to seal pardons. The trial court also conclud-

---

1. The Argus Leader, Associated Press, Aberdeen American News, Black Hills Pioneer of Spearfish, KELO–TV, KORN Radio of Mitchell, KSFY–TV, Madison Daily Leader, The Daily Republic of Mitchell, Radio and Television News Directors Association, Reporters Committee for Freedom of the Press, Society of Professional Journalists, South Dakota Broadcasters Association, South Dakota Newspaper Association, USA Today and Yankton Daily Press & Dakotan appear in this proceeding as Amici Curiae.

2. There were two variations of the notation on the pardons. From July 17, 1984 until October 3, 2002, the notation was:
    IT IS FURTHER ORDERED that all official records relating to (this/these) personal of-

fense(s) are hereby sealed pursuant to section 24–14–11 of the South Dakota Codified Laws.
    From October 3, 2002, the language was slightly modified and the notation became:
    IT IS FURTHER ORDERED that all official records relating to (this/these) personal offense(s) along with all recordation relating to the defendant's arrest, indictment, or information, trial, finding of guilt, and receipt of pardon, are hereby sealed pursuant to section 24–14–11 of the South Dakota Codified Laws.

3. SDCL 24–14–11 became law on July 1, 1984.

ed that the separation of powers doctrine precluded the Legislature from encroaching upon what the court concluded was the Governor's exclusive pardoning authority.

[¶ 6.] The Secretary of State and the Board appeal to this Court. As of this date, the pardons are not part of the court record. We assume they remain in the possession of the Secretary of State and remain sealed. As such no one, including this Court, has access to the identity of the pardon recipients.

## STANDARD OF REVIEW

[¶ 7.] "A writ of prohibition is an extraordinary remedy." *South Dakota Bd. of Regents v. Heege*, 428 N.W.2d 535, 537 (S.D.1988). It may only issue upon a showing that a public officer is acting or is about to act without or in excess of the officer's jurisdiction or authority conferred by law. SDCL 21-30-1. The ordinary standard of review of a trial court's decision involving the request to issue a writ of prohibition is abuse of discretion. *H & W Contracting v. City of Watertown*, 2001 SD 107, ¶ 24, 633 N.W.2d 167, 175. In this case, however, there were no issues of fact for the trial court to resolve. The issues before it were solely those of statutory and constitutional interpretation, thus being questions of law. As such, an erroneous interpretation of law if prejudicial, may be by definition an abuse of discretion. *Cf. State v. Ashbrook*, 1998 SD 115, ¶ 6, 586 N.W.2d 503, 506. The trial court's legal conclusions are fully reviewable by us, and no deference is given them. *Poppen v. Walker*, 520 N.W.2d 238, 241 (S.D.1994).

[¶ 8.] **1. Does either Article 4, Section 3, of the South Dakota Constitution or any statute provide the Governor with the legal authority to seal the pardons granted to the Applicants.**

[¶ 9.] The current version of Article IV, Section 3 of the South Dakota Constitution, as last amended in 1972, states as follows:

The Governor may, except as to convictions on impeachment, grant pardons, commutations, and reprieves, and may suspend and remit fines and forfeitures.

Neither "grant" nor "pardon" are defined in the constitution. "The words used in the Constitution are to be taken in their natural and obvious sense, and are to be given the meaning they have in common use unless there are very strong reasons to the contrary." *In re Janklow*, 1999 SD 27, ¶ 3, 589 N.W.2d 624, 626 (citation omitted). A common legal definition of "grant" at that time of the constitutional amendment's adoption was "to bestow; to confer; upon someone other than the person or entity which makes the grant." Black's Law Dictionary 829 (4th ed 1968). "Pardon" was defined as:

An act of grace, proceeding from the power entrusted with the execution of the laws, which exempts the individual on whom it is bestowed from the punishment the law inflicts for a crime he has committed.

*Id.* at 1268.

[¶ 10.] It is clear that the wording of the text of Article IV, Section 3, does not provide an explicit answer to the question of whether the Governor has the legal authority to seal the 279 pardons. Both parties (as well as the amicus) recognize as much and spend a significant portion of their legal argument in an attempt to establish that the legal evolution of pardons in this State support their interpretation of the current provision. They bring to our attention previous versions of what is now Article IV, Section 3, South Dakota constitutional debates and case law from this and other jurisdictions. In the past, such secondary sources outside of the text

of the constitutional provision have provided us with assistance. *See Wegleitner v. Sattler,* 1998 SD 88, ¶ 11, n. 3, 582 N.W.2d 688, 692. The "historical context" of a constitutional provision is a guide to its interpretation. *Cleveland v. BDL Enterprises, Inc.,* 2003 SD 54, ¶ 40, 663 N.W.2d 212, 223. "Where the meaning of a constitutional provision is unclear, it is appropriate to look at the intent of the drafting bodies[.]" *Pitts v. Larson,* 2001 SD 151, ¶ 24, 638 N.W.2d 254, 260 (Gilbertson, C.J., dissenting); *Poppen,* 520 N.W.2d at 242; *Cummings v. Mickelson,* 495 N.W.2d 493, 499 (S.D.1993).

[¶ 11.] In 1889 the South Dakota Constitution[4] was enacted. In considering the power of the new Governor to pardon, the constitutional convention looked to existing Territorial law on the subject of sealing pardons. Section 551 of the 1877 Territorial criminal procedure code required that a pardon granted by the Territorial Governor be filed with the Secretary of Dakota Territory, and as a record, it was "open to public inspection." The new constitution contained Article IV, Section 5 which set forth the powers of the Governor regarding pardons:

> The governor shall have the power to remit fines and forfeitures, to grant reprieves, commutations and pardons after conviction, for all offenses except treason and cases of impeachment; provided, that in all cases where the sentence of the court is capital punishment, imprisonment for life, or for a longer term than two years, or a fine exceeding two hundred dollars, no pardon shall be granted, sentence commuted or fine remitted, except upon the recommendation in writing of a board of pardons, consisting of the presiding judge, secretary of state and attorney general, after full hearing in open session, and such recommendation, with the reasons therefore, shall be filed with the office of the secretary of state, but the legislature may by law in all cases regulate the manner in which the remission of fines, pardons, commutations and reprieves, may be applied for. Upon conviction for treason he shall have the power to suspend the execution of the sentence until the case shall be reported to the legislature at its next regular session, when the legislature shall pardon or commute the sentence, direct the execution of the sentence or grant a further reprieve. He shall communicate to the legislature at each regular session each case of remission of fine, reprieve, commutation or pardon, granted by him in the cases in which he is authorized to act without the recommendation of the said board of pardons, stating the name of the convict, the crime of which he is convicted, the sentence and its date, and the date of the remission, commutation, pardon or reprieve, with his reasons for granting the same.[5]

[¶ 12.] To emphasize the continuity with previous Territorial law, within

---

4. Pardons have been in existence in this jurisdiction since its governmental beginnings. The first session of the Dakota Territorial Legislature addressed the authority of the Territorial Governor to grant pardons:

> That in all cases, where the governor is authorized to grant pardons, he may, upon the petition of the person convicted, grant a pardon, upon such conditions, and with such restrictions, and under such limitations, as he may think proper, and he may issue his warrant to all proper officers to carry into effect such pardon; which warrant shall be obeyed and executed instead of the sentence, if any, which was originally awarded.

1862 DakTerrSL, ch 64.

5. The previous Constitutional Conventions of 1883, 1885 and 1887 do not provide any significant analytical assistance on this issue. Those conventions adopted basically the same text.

four months of the 1889 Constitution going into effect, the First South Dakota Legislature passed 1890 SD Laws ch 32 § 11, which stated: "[w]hen the Governor grants a reprieve, commutation or pardon, he must, within ten days thereafter, file all the papers presented to him in relation thereto in the office of the Secretary of State, by whom they must be kept as records *open to public inspection.*" (emphasis added).[6]  This First Legislature contained numerous members who, only months before as delegates to the 1889 Constitutional Convention, had drafted Article IV, Section 5. *Green v. Siegel, Barnett & Schutz,* 1996 SD 146, ¶ 18, 557 N.W.2d 396, 402.  This is significant as the object of constitutional construction is "to give effect to the intent of the framers of the organic law and of the people adopting it." *Poppen,* 520 N.W.2d at 242.  This statute remained in effect until its repeal in 1978. *See* SDCL 23–59–3.

[¶ 13.]  This Court did have an early occasion to conclude that a pardon was not a complete erasure of the underlying criminal conviction.  In the case of *In re Egan,* we denied reinstatement to a disbarred attorney who had subsequently received a pardon.  We concluded:

> It is elementary that a pardon in such case is an act of clemency, and does not restore the applicant to his office of attorney, and does not restore to him that good character which he is required to possess upon being admitted to the bar and required to maintain in order so to remain.

52 S.D. 394, 218 N.W. 1, 12 (1928).

[¶ 14.]  Article IV, Section 5 remained in effect until 1960 when it was amended to state:

The governor shall have the power on the written recommendation of the board of pardons and paroles to remit fines and forfeitures, to grant reprieves, commutations and pardons after conviction, for all offenses, except treason and cases of impeachment, but the legislature may by law regulate the manner in which the remission of fines, pardons, commutations and reprieves may be applied for.  Upon conviction for treason the governor shall have the power to suspend execution of the sentence until the case shall be reported to the legislature at its next regular session, when the legislature shall either pardon or commute the sentence, direct the execution of the sentence or grant a further reprieve.  He shall communicate to the legislature at each regular session each case of remission of fine, reprieve, commutation or pardon, granted by him, stating the name of the convict, the crime of which he is convicted, the sentence if any has been imposed, and its date, and the date of the remission, commutation, pardon or reprieve.

The board of pardons and paroles shall consist of an assistant attorney general who shall serve for the duration of the term of the attorney general appointing him as an ex officio member of the board and two electors who shall be appointed for terms of four years commencing on the first Tuesday after the first Monday in January, 1961, and every fourth year thereafter, one by the governor and the other by the supreme court.  A vacancy shall be filled for the unexpired term by the respective appointing power that theretofore made

---

**6.**  Under ch 105, § 1 of the 1890 Session Laws, all Territorial acts were carried over to the new State of South Dakota until "altered, amended or repealed."  The only difference between the Territorial statute and the South Dakota statute was the change in the place of filing from the "secretary of the territory" to the "Secretary of State."

the appointment. The board of pardons and paroles shall have the power to parole persons convicted of crime under the laws of this state upon such condition and with such restrictions and limitations as may be provided by law. This amendment shall not be so construed as to affect the provisions of article V, section 39.

We subsequently held in Opinion of the Judges, 83 S.D. 477, 161 N.W.2d 706 (1968), that the Governor's power to issue a pardon was not unlimited but was qualified by the express approval of the Board.

■ [¶ 15.] This version of Article IV, Section 5 stayed in effect for twelve years. In 1972 the executive article of the South Dakota Constitution was re-written and along with it, Article IV, Section 5. It was amended to its current terminology which is now found in Article IV, Section 3:

The Governor may, except as to convictions on impeachment, grant pardons, commutations and reprieves, and may suspend and remit fines and forfeitures.

Constitutional amendments are adopted for the purpose of making a change in the existing system and we are "under the duty to consider the old law, the mischief, and the remedy, and interpret the constitution broadly to accomplish the manifest purpose of the amendment." *South Dakota Auto. Club, Inc. v. Volk,* 305 N.W.2d 693, 697 (S.D.1981) (citation omitted).

[¶ 16.] Clearly the 1972 amendments to the Governor's pardoning power made significant changes. The minutes of the Constitutional Revision Commission indicate that an amendment of the existing article was rejected in favor of a totally new shorter text which was declared by the Commission Chair to provide the Governor with needed flexibility. The minutes also indicate that the current text was in large part adopted from Article III, Section 21 of the Alaska Constitution, Executive Department, Article IV. *Minutes of the Constitutional Revision Commission Document # 6* at 28, and attached *Official Comments* (August 31, 1970). The Commission went on to state the changes the new proposal would make in place of the existing constitutional provision:

The recommended Section ... is taken from the Alaska Constitution, Article III, Section 21. The Commission feels this proposed section is a good consolidation of the current Section 5. The recommended section makes the following specific changes: (1) Takes out the specific requirement of written recommendation from the Board of Pardons and Paroles before the Governor can grant pardons, commutations, reprieves, and suspend or remit fines and forfeitures; (2) Deletes the provision for allowing suspension of execution for treason until the Legislature convenes; (3) Deletes the provision that the Governor communicate to the Legislature each remission of fine or pardon; (4) Takes out the specific provision providing for the structure of the Board of Pardons and Paroles and allows for it to be provided by law. It was felt that the establishment of a parole system should best be handled by statute as opposed to the present constitutional provision.

*Commission Document # 32* at 15–17 (July 12, 1971).[7] Despite this detailed list

---

7. The Alaska Constitution and its interpretative case law do not support the conclusion of the trial court herein as to the constitutional authority of the Governor to seal pardons. In Dancer v. State, the Alaska Court of Appeals concluded:

The minutes of the constitutional convention discussing this provision do not specifically address the question of parole. Dancer points out that the drafters did address the governor's clemency power during their deliberations and apparently intended to

of changes, nowhere is there any suggestion that the proposed changes would vest total authority with the Governor over the pardon's filing and possible sealing. Further, the 1972 Legislature which proposed this constitutional amendment, saw no reason to amend or repeal SDCL 23–59–3 which, since the 1870's guaranteed public inspection of the pardons filed with the Secretary of State.

[¶ 17.] In 1978, the Legislature enacted SDCL ch 24–14 which deals with "Executive Clemency." It also repealed SDCL 23–59–3. In 1983, SDCL ch 24–14 was amended to include the passage of SDCL 24–14–11. Based upon the enactment of SDCL ch 24–14, in his Opinion 03–01, the Attorney General concluded there now exists four types of pardons in South Dakota which can be granted by the Governor. We agree with this analysis:

1. An applicant can Petition the Board for an Executive Order pardon under SDCL ch 24–14 and Executive Order 87–15.

2. An applicant can petition the Board for an exceptional pardon under SDCL 24–14–8 if the applicant has been released from the penitentiary for at least five years and has had only one felony for an offense punishable by imprisonment less than life.

3. An applicant may petition the Governor who may refer the application to the Board for consideration and a recommendation pursuant to SDCL 24–14–5.

4. An applicant may petition to the Governor who may act on the application pursuant to his constitutional power without involving the Board.

It is the fourth type of pardon which is the basis for the dispute now before us as all Applicants in this case claim they were recipients of pardons directly from the Governor; they did not go through the Board. However, controversy exists as to the application of SDCL 24–14–11 to the direct Governor's pardons without Board participation. It states:

> Any person who has been granted a pardon *under the provisions of this chapter* shall be released from all disabilities consequent on such person's conviction. Upon the granting of a pardon under the provisions of this chapter, the Governor shall order that all official records relating to the pardoned person's arrest, indictment or information, trial, finding of guilt and receipt of a pardon *shall be sealed.* The effect of such order is to restore such person, in the contemplation of the law, to the status of the person occupied before an arrest, indictment or information[.] [8]

---

prevent secret pardons and commutations by making the governor's powers subject to the legislative procedures. *See* 3 Proceedings of the Alaska Constitutional Convention, at 2190–91 (1956).
715 P.2d 1174, 1182 (AlaskaCtApp 1986).

8. As of July 1, 2003, SDCL 24–14–11 was amended. Although not applicable to the issues now before us, the statute currently reads:

Any person who has been granted a pardon under the provisions of this chapter shall be released from all disabilities consequent on the person's conviction. Upon the granting

of a pardon under the provisions of this chapter, the Governor shall order that all official records relating to the pardoned person's arrest, indictment or information, trial, finding of guilt, application for a pardon, and the proceedings of the Board of Pardons and Paroles shall be sealed. The Governor shall file a public document with the secretary of state certifying that the Governor has pardoned the person in compliance with the provisions of this chapter. The document shall remain a public document for five years and after five years that document shall be sealed. The receipt of any pardon, which was granted without

(emphasis added).[9] It is clear that the pardon order entered by the Governor relied upon SDCL 24–14–11 as the basis for the sealing of the pardon. SDCL 24–14–11, however, does not apply to pardons directly issued by the Governor but instead applies to the three types of pardons which involve the Board. By their own admission, Applicants were not granted pardons "under the provisions of this chapter."

[¶ 18.] Despite the 1978 statutory changes, from the adoption of Article IV Section 3, in November of 1972 until July 17, 1984, no pardons were filed with the Secretary of State containing the Governor's order sealing the pardons. Only upon the enactment date of SDCL 24–14–

11 did all orders thereafter contain the sealing designation.[10]

[¶ 19.] The trial court concluded that Article IV, Section 3, by itself authorized the Governor to seal his pardons under the rationale that "the 1972 amendments to the Constitution intended that the executive branch occupy the field to the exclusion of both the judicial and legislative branches." The trial court further concluded that "distilling the ultimate question before this Court within the framework discussed above, the issue simply boils down to whether the executive's power to grant pardons is broad enough to encompass the authority to seal granted pardons and whether the Legislature has any ability to shape the governor's power."[11] Applicants contend this analysis is

---

following the provisions of this chapter, may not be sealed. The pardon restores the person, in the contemplation of the law, to the status the person occupied before arrest, indictment, or information. No person as to whom such order has been entered may be held thereafter under any provision of any law to be guilty of perjury or of giving a false statement by reason of such person's failure to recite or acknowledge such arrest, indictment, information, or trial in response to any inquiry made of such person for any purpose.

For the sole purpose of consideration of the sentence of a defendant for subsequent offenses or the determination of whether the defendant is a habitual offender under chapter 22–7 or whether the defendant has prior driving under the influence convictions pursuant to chapter 32–23, the pardoned offense shall be considered a prior conviction.

The court shall forward a nonpublic record of disposition to the Division of Criminal Investigation. The nonpublic record shall be retained solely for use by law enforcement agencies, prosecuting attorneys, and courts in sentencing such person for any subsequent offense and in determining whether or not, in any subsequent proceeding, the person is a habitual offender under chapter 22–7 or the determination of whether the defendant has prior driving

under the influence convictions pursuant to chapter 32–23.

9. This statute is not unique in requiring sealing or limiting public access to state records. *See also* SDCL 25–6–15 (adoption records), SDCL 34–25–16.4 & 5 (birth records sealed after issuance of new one), SDCL 26–6–20 (child welfare agencies), SDCL 61–3–4 (employment information obtained in administration of unemployment compensation law), SDCL 34–12–17 (hospital licensing and inspection), SDCL 58–5A–41 (insurance holding company), SDCL 26–7A–37 & 113 (juvenile court records), SDCL 34–14–1 & 4 (medical research), SDCL 45–6C–14 (mineral exploration permit filings), SDCL 45–6B–19 (mining permit applications), SDCL 28–1–29 (public assistance), SDCL 14–2–51 (public library records), SDCL 52–3–5 (savings and loan associations), SDCL 10–1–28.1 & 9 (tax information), SDCL 25–5A–20 (termination of parental rights), SDCL 45–6D–15,42 & 45 (uranium exploration permit filings), SDCL 33–16–23 (veterans files) and SDCL 62–6–5 (workers' compensation administration).

10. The record does not indicate whether the current Governor is following the practice of his predecessors.

11. The trial court did not focus on the Secretary of State's constitutional status. The Sec-

correct.

[¶ 20.] As can be seen from the scarcity of South Dakota case law authority cited above, there is no opinion from this Court even remotely addressing this constitutional issue. A review of case law in other jurisdictions reveals the same dearth. Applicants rely upon the case of *Parole Commission v. Lockett*, 620 So.2d 153 (Fla. 1993). The trial court also relied upon *Lockett* in analyzing the Governor's pardoning powers in South Dakota. In *Lockett*, the Court determined that investigative files compiled by the Florida Parole Commission as part of the Florida Governor's pardon process, were not subject to that state's public record laws. However, *Lockett* only dealt with the investigative files and not the actual pardon orders granting the pardons which were filed with the Florida Secretary of State.

[¶ 21.] The other case cited by both parties and by the trial court is *Doe v. Salmon*, 135 Vt. 443, 378 A.2d 512 (1977). The pardoning process in Vermont and South Dakota appears to be generally the same. In *Salmon*, the Governor made agreements with some pardon recipients that their pardons would remain private in the interests of the individual's privacy. The Court concluded that "[t]hose agreements, although compassionately entered into, could only be valid if authorized by law, and there is no such law." *Id.* at 516. Likewise, the Court concluded while the Governor had the constitutional power to grant pardons, that constitutional power

did not extend to ordering them to be sealed.

[¶ 22.] The trial court distinguished *Salmon* upon the basis that the Vermont constitution had a clause which stated:

That all power being originally inherent in and consequently derived from the people, therefore, all officers of government, whether legislative or executive, are their trustees and servants; and at all times, in a legal way, accountable to them.

*Id.* at 515. The trial court reasoned that this was a limit upon the power of the Governor of Vermont to pardon which did not exist in South Dakota. However, the trial court failed to consider Article VI, Section 1 of the South Dakota Constitution:

All men are born equally free and independent, and have certain inherent rights, among which are those of enjoying and defending life and liberty, of acquiring and protecting property and the pursuit of happiness. To secure these rights, governments are instituted among men, deriving their just powers from the consent of the governed.

In accord is Article VI, Section 26 of the South Dakota Constitution:

All political power is inherent in the people, and all free government is founded on their authority, and is instituted for their equal protection and benefit, and they have the right in lawful and constituted methods to alter or reform

---

retary of State is not an employee of the Governor. Under Art. IV, § 7, the independent constitutional office of Secretary of State is created. Art. IV, § 8 gives the Governor the power of reorganization of "[a]ll executive and administrative offices, boards, agencies, commissions and instrumentalities of the state government[.]" However, expressly excluded from that broad authority are the constitutional offices which include the Secretary

of State. The duties of the Secretary of State are found at SDCL ch 1–8. Under SDCL 1–8–1(4) the Secretary is to file any document which the law requires to be filed in that office. Under SDCL 1–27–1 if the keeping of a document is required, it is open to inspection "by any person during normal business hours" unless declared confidential or secret per SDCL 1–27–3 and other applicable laws.

their forms of government in such manner as they may think proper.

We find *Salmon* factually and legally persuasive.

[¶ 23.] **2. Whether the statutory enactments concerning public access to pardon documents violate the doctrine of separation of powers.**

[¶ 24.] It is clear that since 1889, the South Dakota Legislature has involved itself in this issue by allowing public access from 1889 to 1978 and from 1984 onward, denying public access to those pardons which are granted pursuant to SDCL ch 24–14. In fact, the express language of the Governor's order sealing the document invoked SDCL 24–14–11 as the source authority and not Article IV, Section 3 of the Constitution. Nevertheless, the trial court concluded that "[e]ven though [the Governor] referenced several pardons were to be sealed in accordance with statutory law, precision is of no consequence as his authority is exclusively derivate of the Constitution."

[¶ 25.] Article II of the South Dakota Constitution provides the powers of the government of this State are divided into three distinct departments: the legislative, executive and judicial, the powers of each being prescribed by the Constitution. The cornerstone of the trial court's analysis is our long standing holding that:

> The South Dakota Constitution, unlike the Constitution of the United States, does not constitute a grant of *legislative power.* Instead, our constitution is but a limitation upon the legislative power

and the legislature may exercise that power in any manner not expressly or inferentially proscribed by the federal or state constitutions. Thus, except as limited by the state and federal constitutions, the *legislative power* of the *state legislature is unlimited.* What the representatives of the people have not been forbidden to do by the organic law, that they may do. Consequently, in determining whether an act is unconstitutional, we search the state and federal constitutions for provisions which prohibit its enactment rather than for grants of such power.

*Breck v. Janklow,* 2001 SD 28, ¶ 9, 623 N.W.2d 449, 454 (emphasis added) (citation omitted). While Applicants urge us to apply this analysis, it is clear that this refers to the constitutional power of the Legislature, not the Governor. While the Governor surely has the inherent power to carry out his or her constitutional and statutory duties, Applicants are unable to cite to any similar expansive grant of inherent authority to the Governor as the above doctrine vests with the Legislature.[12] Moreover, no other state has held the power to seal a pardon naturally flows from a Governor's pardoning authority.

[¶ 26.] If the Legislature has no constitutional authority to create a statutory framework for the handling of pardons after they are issued because the Governor's pardoning authority is exclusive, then logically, as the third co-equal branch of government, this Court would lack the con-

---

**12.** Inherent power has been described by a member of this Court as the power "to superintend its internal management and carry out its constitutionally-mandated duties." *Fullmer v. State Farm Ins.,* 514 N.W.2d 861, 868 (S.D.1994) (Henderson, J., concurring in part and dissenting in part). At the time of the 1972 constitutional amendments of Article IV, inherent power was defined as:

> An authority possessed without its being derived from another. A right, ability, or faculty of doing a thing, without receiving that right, ability, or faculty from another.

Black's Law Dictionary 921 (4th Ed.1968).

stitutional authority to involve itself in the resolution of this dispute. This Court has jurisdiction, however, because we have a single constitution in which all provisions must be construed together, not a balkanized collection of individual articles which exist as an independent grant of sovereignty to the exclusion of all others. *Volk,* 305 N.W.2d at 696–97; *Janklow,* 1999 SD 27, ¶ 7, 589 N.W.2d at 626.

[¶ 27.] The discretionary nature of the constitutional power of the Governor to grant pardons is not affected by the issue that confronts us today. There has been no legislative attempt to limit the number of pardons a Governor can issue, or for what offenses, or to limit the subjective denial or grant of the application by the Governor or the like.

### CONCLUSION

[¶ 28.] We are well aware that there may be subjective privacy interests of pardon applicants which were deemed the basis for ordering these pardons sealed. We do not know the merits of these privacy claims because these pardons remain sealed even from this Court at this time. The record contains no allegation that these pardons were not granted in good faith. As such, there is no evidentiary or legal basis to cast any negative reflection on the good faith reason for which they were given. *See Salmon,* 378 A.2d at 516.

[¶ 29.] Nevertheless, Applicants fail to establish how the Governor's future authority to pardon will be limited by whether the pardon is sealed or open to public inspection. As the underlying conviction is public record, the applicant for a pardon would presumably be better off with a pardon publicly granted rather than no pardon at all.

[¶ 30.] We determine there is no statutory or constitutional right of the Governor

to seal pardons granted directly by him or her which does not invoke the involvement of the Board under SDCL ch. 24–14. There is no express language in Article IV, Section 3 which supports a contrary result. From 1889 to 1978 by statute, pardons were mandated to be public the same as their underlying convictions were public. When the 1972 amendment to the Governor's pardoning power was enacted, the mandate of SDCL 23–59–3 remained intact. When SDCL 23–59–3 was repealed in 1978, and replaced by SDCL ch. 24–14, the authority to seal subsequently vested by SDCL 24–14–11 in 1984 only applied to those pardons involving the Board and that chapter.

[¶ 31.] The constitutional power of the Governor concerning the authority to grant pardons, while admittedly broad, is not unlimited. Though the Governor may freely grant pardons, there is nothing in our constitution, statutes or case law which treats the pardon, once granted, as also the personal domain of the Governor. Filing with the Secretary must be more of a legal act than simply privately warehousing the pardon documents. What this State has is a two-prong pardon system: a pardon granted by the Governor with input from the Board which may be sealed per SDCL 24–14–11, or a pardon granted solely by the Governor with no outside involvement but open to public inspection. "[Executive clemency] is lodged in the governor, not for the benefit of the convict only, but for the welfare of the people, who may properly insist upon the performance of that duty by him, if a pardon is to be granted." *Rich v. Chamberlain,* 104 Mich. 436, 62 N.W. 584, 585 (1895).

[¶ 32.] We reverse and remand to the trial court with instructions to dissolve the

writ of prohibition.[13]

[¶ 33.] SABERS, KONENKAMP, and MEIERHENRY, Justices, and TUCKER, Circuit Judge, concur.

[¶ 34.] TUCKER, Circuit Judge, sitting for ZINTER, Justice, disqualified.

---

**13.** Other claims were initially raised by the Applicants at trial. However, they were not the basis of the trial court's decision and Applicants did not pursue them on appeal by notice of review. They are deemed waived.