#24407-DG
**2007 SD 12**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

BOB GRAY, PRESIDENT PRO TEMPORE
OF THE SOUTH DAKOTA STATE
SENATE and MEMBERS OF THE SOUTH
DAKOTA STATE SENATE,                          Applicants,

   v.

DAVID R. GIENAPP, CIRCUIT JUDGE,          Respondent,

   and

DANIEL SUTTON,                                Intervenor and Respondent.

* * * *
ORIGINAL PROCEEDING
* * * *

LAWRENCE E. LONG
Attorney General
Pierre, South Dakota

ROXANNE GIEDD
Assistant Attorney General
Pierre, South Dakota

JEFFREY P. HALLEM                 Attorneys for Applicants Bob Gray
Deputy Attorney General           and Members of the South Dakota
Pierre, South Dakota              State Senate.

MICHAEL J. BUTLER of
Butler Law Office
Sioux Falls, South Dakota

PATRICK DUFFY of
Duffy and Duffy                   Attorneys for Intervenor and
Rapid City, South Dakota          Respondent Daniel Sutton.

* * * *
CONSIDERED
JANUARY 18, 2007

OPINION FILED 1/18/07

#24407
GILBERTSON, Chief Justice

[¶1.] On January 10, 2007, the circuit court for the Third Judicial Circuit, venued in Moody County, the Honorable David Gienapp presiding, filed an alternative writ of prohibition. It ordered Bob Gray, the president pro tempore of the South Dakota Senate, and the members of the Senate to "desist and refrain" "during the 2007 South Dakota Legislative Session under Proposed Senate Rules on Discipline and Expulsion of Members" from holding any hearings regarding Senator Dan Sutton's alleged sexual misconduct with a senate page. The writ also restrained Gray and the Senate from disclosing the contents of the Division of Criminal Investigation's investigation "in any public manner or fashion."

[¶2.] On January 11, 2007, the Senate applied for a writ of prohibition from this Court. It asks this Court to declare that the alternative writ of prohibition is without force and effect, thereby allowing the Senate to proceed to resolve the legislative issues regarding Senator Sutton.

## FACTS

[¶3.] In February 2006 an eighteen-year-old senate page contacted the attorney general and alleged that Dan Sutton, a state senator for District 8, made sexual advances and inappropriately touched him at a Ft. Pierre motel. The complaint was referred to the Division of Criminal Investigation. No criminal charges have been filed against Senator Sutton.

[¶4.] On October 11, 2006, Senator Lee Schoenbeck, then president pro tempore of the Senate, was contacted by the father of the page regarding the allegations. Schoenbeck wrote to Senator Sutton the next day and advised him:

> We do not have authority to bring criminal charges. The worst that the senate can do is to expel. The full legislature would have the power to impeach. I will formally refer this to either the Executive Board or the Governor in one week. If you are no longer a member of the state senate on October 18th, there will be no further action for the senate to take on this matter.

Senator Sutton did not resign by October 18.

[¶5.] On October 27, 2006, Governor M. Michael Rounds, pursuant to Article IV, § 3 of the South Dakota Constitution and in response to a request of the Senate's executive board, issued an Executive Proclamation calling the Senate into a special session on November 27, 2006. The purpose of the special session was "to hear, investigate and deliberate allegations concerning the conduct of Senator Dan Sutton and to take such action or actions as the Senate of the South Dakota State Legislature deems, in its collective judgment, to be necessary[.]"

[¶6.] On November 7, 2006, Senator Sutton was reelected to the Senate for the 2007 and 2008 sessions by District 8 voters. He was also served with a written notice of the special session to "investigate public allegations of conduct unbecoming a State Senator pursuant to Article III, § 9 of the South Dakota Constitution and the Rules of the South Dakota Legislature and Rules of the South Dakota Senate[.]"

[¶7.] Senate leaders released their proposed rules for the special session on November 13, 2006. Senator Sutton resigned from the 2006 Senate the next day, November 14, 2006, and announced that he intended to reclaim his seat in January 2007 pursuant to his November 7, 2006 reelection. The special session was cancelled.

#24407

[¶8.] The Eighty-Second session of the legislature convened on January 9, 2007. Senator Sutton took the oath of office and was seated. The Senate also voted to adopt the permanent joint rules and the permanent Senate rules of the Eighty-First legislative session as the temporary rules of the Eighty-Second legislative session.

[¶9.] Joint Rule 1-11 of the Eighty-First legislative session provides:

> Either house may punish its members for disorderly behavior and, with concurrence of two-thirds of all members elected, expel a member. The reason for such expulsion shall be entered on the journal with the names of the members voting on the question.

[¶10.] In addition, the joint rules of the Eighty-First legislative session include a chapter on decorum. While many of the sections in this chapter deal with decorum within either chamber or gallery, Rule 1A-4 prohibits sexual harassment and provides, in part, "[a]ll members shall avoid any action or conduct which could be viewed as sexual harassment."

[¶11.] Moreover, Senate Rule S5-2 provides "Mason's Manual of Legislative Procedure governs the proceedings of the Senate in all proceedings of the Senate in cases not covered by these rules or the Joint Rules." The House has a similar rule. Rule H4-2. Mason's Manual is a widely recognized authority on state legislative and parliamentary procedures. Chapter 50 of this manual, which the Senate adopted, deals with the election and qualifications of members and the discipline and expulsion of members.

[¶12.] On January 10, 2007, the Senate adopted the temporary Senate rules as the permanent rules of the Eighty-Second legislative session. It also adopted

rules regarding the discipline and expulsion of members and amended these to the Senate rules as a new chapter. Senator Sutton was excused from this vote.

[¶13.] The rules regarding the discipline and expulsion of members allow any senator to move for the establishment of a select committee to investigate the conduct of any other senator. Upon passage of the motion by a majority vote, a nine member committee is formed. The rules deal with committee meetings, notice, procedures in committee, subpoena power, contempt, and the effect of the investigated senator's resignation. Under these rules a member being investigated receives notice, is entitled to attend all meetings with legal counsel, and is afforded "full opportunity to present the member's position, to present witnesses in support of the member's position, and . . . to confront and question witnesses called by the committee[.]" Rule 8-4(3). Any action to expel, censure, discipline, or exonerate a senator is proposed in a committee report to the Senate. The full Senate then considers whether to adopt the committee report. Expulsion requires a two-thirds majority vote. Censure or discipline requires a three-fifths vote. Exoneration requires a majority vote.

[¶14.] At this point there has been no motion to establish a select committee on discipline and expulsion to investigate the allegations against Senator Sutton. On January 10, 2007, the day the Senate adopted its rules, Senator Sutton went to the circuit court where he applied for and received, without prior notice, an alternative writ of prohibition ordering the Senate to refrain from holding any hearings regarding Senator Sutton under the rules of discipline and expulsion.

STANDARD OF REVIEW

[¶15.]     We set forth the standard of review for this type proceeding in Doe v.
Nelson, 2004 SD 62, ¶ 7, 680 NW2d 302, 305:

> The ordinary standard of review of a trial court's decision
> involving the request to issue a writ of prohibition is
> abuse of discretion.  H & W Contracting v. City of
> Watertown, 2001 SD 107, ¶ 24, 633 NW2d 167, 175.  In
> this case, however, there were no issues of fact for the
> trial court to resolve.  The issues before it were solely
> those of statutory and constitutional interpretation, thus
> being questions of law.  As such, an erroneous
> interpretation of law if prejudicial, may be by definition
> an abuse of discretion.  *Cf.* State v. Ashbrook, 1998 115,
> ¶ 6, 586 NW2d 503, 506.

ISSUE

[¶16.]     **Did a circuit court judge of the Third Judicial Circuit have
jurisdiction to prohibit the Senate, while the legislature is in session, from
commencing legislative proceedings under rules adopted by it, to
investigate allegations against Senator Sutton, one of its members, for
misconduct, including sexual misconduct involving a former employee, a
senate page?**

DISCUSSION

A.

[¶17.]     Article II of the South Dakota Constitution provides:

> The powers of the government of the state are divided
> into three distinct departments, the legislative, executive
> and judicial; and the powers and duties of each are
> prescribed by this Constitution.

Article II explicitly states the separation of powers doctrine and encompasses three

prohibitions:

> (1)  no branch may encroach on the powers of another,
> (2) no branch may delegate to another branch its essential
> constitutionally assigned functions, and (3) quasi-

> legislative powers may only be delegated to another
> branch with sufficient standards.

State v. Moschell, 2004 SD 35, ¶ 14, 677 NW2d 551, 558. "Each branch, so long as it acts within the limitations set by the constitution, may exercise those powers granted to it by the constitution without interference by the other branches of government." State *ex rel.* Walter v. Gutzler, 249 NW2d 271, 273 (SD 1977).

B.

[¶18.] This Court has both constitutional and statutory authority to issue a writ of prohibition to "arrest" or halt the proceedings of any tribunal or lower court under appropriate circumstances. Sioux Falls Argus Leader v. Miller, 2000 SD 63, ¶ 4, 610 NW2d 76, 81 (citing SDConst art V, § 5; SDCL 21-30-1; 21-30-2; Cummings v. Mickelson, 495 NW2d 493, 495 (SD 1993)). The supreme and circuit courts may issue a writ of prohibition "to an inferior tribunal, or to a corporation, board or person, in all cases where there is not a plain, speedy, and adequate remedy in the course of law." SDCL 21-30-2. The writ "arrests the proceedings, administrative or judicial, of any tribunal, corporation, board or person, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board, or person, or are without or in excess of the powers of authority conferred by law upon such tribunal, corporation, board, or person." SDCL 21-30-1. Prohibition is a preventative remedy rather than a corrective one. State *ex rel.* Line v. Kuhlman, 167 Neb 674, 94 NW2d 373 (1959).

[¶19.] The doctrine of separation of powers has been a fundamental bedrock to the successful operation of our state government since South Dakota became a state in 1889. A few years later this Court decided State *ex rel.* Cranmer v.

#24407

Thorson, 9 SD 149, 68 NW 202 (1896). We were asked, in an original action, to enjoin the secretary of state from certifying to the voters a proposed constitutional amendment which had been passed by the legislature. We concluded that we did not have jurisdiction to issue an injunction because it would interfere with legislative proceedings. In so doing, we examined the issue of our authority to grant injunctive relief in instances involving our constitutional relationship with the actions of the legislature:

> Because this Court has power to issue writs of mandamus, quo warranto, certiorari, injunction and other original and remedial writs, with authority to hear and determine the same, in such cases . . . it does not follow that it has jurisdiction to issue an injunction upon any and all occasions.

> * * *

> [N]o consideration of policy or convenience should induce the courts to assume to exercise a power that does not belong to them, nor, on the other hand, should any consideration of that kind, or of any kind, induce them to surrender a power which it is their duty to exercise. The assumption of a power not vested in them would be a violation of the constitution, since it would be a usurpation of the power conferred upon another branch of the government. It would disturb the system of checks and balances which the constitution has so carefully constructed and which the courts have ever guarded with most scrupulous care.

9 SD 149 at 152, 156, 68 NW at 202-03, 204.

[¶20.] The question in this case then, is whether the circuit court encroached on the powers of the legislature by issuing an alternative writ prohibiting the Senate from proceeding with a disciplinary hearing of a member.

-7-

[¶21.]     Each house of the legislature "shall be the judge of the election returns and qualifications of its members" and "shall determine the rules of its proceedings."  SDConst art III, § 9.  "[T]he power of each house to pass upon the qualifications of its own members is exclusive or plenary."  *Gutzler*, 249 NW2d at 273.

[¶22.]     The powers possessed by the legislature are broad:

> The South Dakota Constitution, unlike the Constitution of the United States, does not constitute a grant of *legislative power*.  Instead, our constitution is but a limitation upon the legislative power and the legislature may exercise that power in any manner not expressly or inferentially proscribed by the federal or state constitutions.  Thus, except as limited by the state or federal constitutions, the *legislative power* of the *state legislature is unlimited*.  What the representatives of the people have not been forbidden to do by the organic law, that they may do.  Consequently, in determining whether an act is unconstitutional, we search the state and federal constitutions for provisions which prohibit its enactment rather than for grants of power.

*Doe*, 2004 SD 62, at ¶ 25, 680 NW2d at 312 (quoting Breck v. Janklow, 2001 SD 28, ¶ 9, 623 NW2d 449, 454).  (emphasis in original).

[¶23.]     Although *Doe* dealt with the issue of the constitutional authority of the governor to grant pardons, this Court recognized that the doctrine quoted above vests the legislature with "inherent authority."  *Id.*  Cited as example of the legislature's "inherent authority" is "the power '*to superintend its internal management* and carry out its constitutionally-mandated duties.'"  *Id.* ¶ 25 n 12, 680 NW2d at 312 n 12.  (citations omitted)(emphasis added).

[¶24.]     This concept is embodied in a recent Florida case where a circuit court entered a temporary restraining order prohibiting the legislature from convening a

public hearing to resolve an impasse between the public employees union and the governor. Florida Senate v. Fl. Public Emp. Council 79, 784 So2d 404 (Fla 2001). The Senate asked the Florida Supreme Court to issue a writ of prohibition. The Florida Supreme Court recognized that one of the precepts underlying the separation of powers is that no branch may encroach upon the power of another.

> Where the legislature is concerned, it is only the final product of the legislative process that is subject to judicial review:
>
>> It is the final product of the legislature that is subject to review by the court, not the internal procedures. As we stated in General Motors Acceptance Corp. v. State, 152 Fla 297, 303, 11 So2d 482, 485 (1943), the legislature has the power to enact measures, while the judiciary is restricted to the construction or interpretation thereof.

*Id.* at 408. When the circuit court entered its order barring the Florida Senate from convening a scheduled public hearing it "contravened the internal workings of the Legislature" and "impinged on the sovereignty of a co-equal branch of government." *Id.* at 409. Accordingly, the Florida Supreme Court granted the petition for the writ.

C.

[¶25.] In his affidavit and application for writ of prohibition in circuit court Senator Sutton argued that his potential removal from office for conduct occurring prior to the 2007 legislative session "if done in violation of the State Constitution and State Codified Law" would result in irreparable harm to himself and the voters of District 8. He asked the circuit court to pierce the power of the legislature to

judge the qualifications of its members under the authority of Powell v. McCormack, 395 US 486, 89 SCt 1944, 23 LEd2d 491 (1969).

[¶26.]    In November 1966 Adam Clayton Powell was elected to serve in the United State House of Representatives for the Ninetieth Congress. Although he met the constitutionally mandated standing requirements of age, citizenship, and residence, he was excluded from taking his seat pursuant to a House Resolution based upon allegations that he had deceived House authorities as to travel expenses when he was a member of the Eighty-Ninth Congress.

[¶27.]    The United States Supreme Court rejected the contention that the case did not arise under the United States Constitution within Article III because Article I, § 5 granted each house the power to judge the qualifications of its members. The Court noted that a suit arises under the Federal Constitution if a petitioner's claim will be sustained if the Constitution is given one construction and defeated if given another. 395 US at 514, 89 SCt at __, 23 LEd2d 491. The Court went on to hold that the qualifications of persons who may be chosen are defined by the Constitution and are unalterable by the legislature. The House was powerless to exclude Powell because he had been elected by the voters of his district and was not ineligible to serve under Constitutional provisions.

[¶28.]    The Supreme Court noted that exclusion and expulsion "are not fungible proceedings." 395 US at 512, 89 SCt at ___, 23 LEd2d 491. The House could not exclude a duly elected person meeting all the requirements for membership expressly prescribed in the Constitution. The Court expressed no view

#24407

on what limitations may exist on Congress' power to expel or punish a member once he has been seated.  395 US at 507 n 27, 89 SCt at ___, 23 LEd2d 491.

[¶29.]	We were called upon to examine the scope of our judicial authority to issue a writ of prohibition over contested legislative seats in McIntyre v. Wick, 1996 SD 147, 558 NW2d 347.  The three Justice majority concluded authority existed over the re-count of the ballots.  However, the determination as to who would be seated was left to the legislature after it conducted what proceedings it felt necessary.*

> [T]he final power of determination clearly lies with the applicable house of the legislature and we do not presume to invade it. . . .  [T]his Court has no power under the constitution to make any final determination of the election as regards who will be seated.  That power remains with the legislature under South Dakota Constitution Article III, § 9.

---

\*	In *McIntyre* the Court commented on what legislative proceedings may possibly occur to determine the winners of the contested legislative seats:

> When the legislature assembles at the Capitol in January, any person may appear before either house and assert his rights and title to any seat therein in accord with the procedures prescribed by the legislature.  If such a claim is asserted, whether or not the house will listen to it, what proof it will require, what investigation it will make and what decision it will finally come to concerning the claim are matters entirely and exclusively for that house to determine.  If such a claim is presented and the house sees fit to investigate it, no one can doubt the power of that house to summon and interrogate witnesses, to order ballots and ballot boxes relating to the election to the contested seat brought in for examination and to open and examine the same or send a committee out for that purpose.

1996 SD 147 at ¶ 21, 558 NW2d at 357.

-11-

*McIntyre*, 1996 SD 147 at ¶ 19, 20 n 5, 7, 558 NW2d at 356 n 5, 7. The two dissenting Justices concluded that there was no judicial authority to either recount the votes or declare the winner -- both resided with the legislature. "At its essence, the dispute here is a nonjusticable controversy -- a political question -- which is beyond our jurisdiction to consider in any form." *Id.* at ¶ 63, 558 NW2d at 364. (Sabers, J., and Amundson, J., dissenting).

[¶30.]     In this case, Senator Sutton was not excluded from his Senate seat. He has taken his oath of office. What future action, if any, will be taken by the Senate is purely speculation at this point. The attorney general confirms that this is the limited scope of the issue before us when he stated in his brief:

> Whether the ultimate product of the Senate may be subject to review . . . need not be decided by this Court. Indeed any such decision would be premature since there is nothing in the record to indicate what if any, action the Senate may ultimately take as a result of its investigation into the allegations of [Senator] Sutton's misconduct.

### D.

[¶31.]     The circuit court had no jurisdiction to halt a legislative disciplinary process. Neither did it have the authority to preclude disclosure of the contents of any investigation preparatory for the disciplinary hearing. We limit our holding to those points as that is all the circuit court prohibited the Senate from doing. The writ of prohibition sought by the Senate against the circuit court shall issue.

[¶32.]     SABERS, KONENKAMP, ZINTER and MEIERHENRY, Justices, concur.