CARL G. IVARSSON, JR., CARL A. BARRINGTON, JR., EDWARD THOMAS BRADY, LARRY J. McGLOTHLIN, GEORGE J. FRANKS, IV, PAUL F. HERZOG, JACK E. CARTER, JOANNA SHOBER, RAY COLTON VALLERY, JAMES R. PARISH, COY E. BREWER, JR., ROBERT L. COOPER, AND ALLEN W. ROGERS, PLAINTIFFS v. THE OFFICE OF INDIGENT DEFENSE SERVICES AND THE COMMISSION OF INDIGENT DEFENSE SERVICES, DEFENDANTS

No. COA02-36

(Filed 18 March 2003)

## Constitutional Law— North Carolina—separation of powers— appointment of counsel for indigent criminal defendants

The Indigent Defense Services Act, which created the Office of Indigent Defense Services (IDS) and granted IDS the power to appoint and compensate attorneys who represent indigent crimi-

nal defendants, does not violate the separation of powers provision of the North Carolina Constitution, N.C. Const. art. I, § 6. Although trial court judges have traditionally appointed counsel for indigent defendants in this state, no provision of the state constitution commits the power and responsibility of appointing and compensating attorneys for indigent criminal defendants to any particular branch of state government, and the judiciary retains its inherent power to supervise and discipline the attorneys who appear before it.

Appeal by plaintiffs from judgment entered 10 September 2001 by Judge Orlando F. Hudson, Jr. in Durham County Superior Court. Heard in the Court of Appeals 21 January 2003.

*Mitchell, Brewer, Richardson, Adams, Burge & Boughman, by Ronnie M. Mitchell and Coy E. Brewer, Jr., for plaintiff-appellants.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Norma S. Harrell, for the State.*

*American Civil Liberties Union of North Carolina Legal Foundation, Inc., by Marshall Dayan and Seth Jaffe, amicus curiae.*

EAGLES, Chief Judge.

Plaintiffs appeal from an order denying summary judgment for plaintiffs and granting summary judgment for defendants. After careful review of the record, briefs and arguments of counsel, we affirm.

The evidence tends to show the following. Plaintiffs are attorneys practicing in the Cumberland County area. Plaintiffs challenge the constitutionality of the Indigent Defense Services Act of 2000, enacted as G.S. § 7A-498 *et seq* (2001). This legislation was enacted by the General Assembly in 2000 and took effect on 1 July 2001. The Indigent Defense Services Act created the Office of Indigent Defense Services ("IDS"). The legislation granted IDS the power to appoint and compensate attorneys who represent indigent criminal defendants. The Indigent Defense Services Act was based upon the recommendations of the American Bar Association and the North Carolina General Assembly Study Commission on Indigent Defense.

IVARSSON v. OFFICE OF INDIGENT DEF. SERVS.

[156 N.C. App. 628 (2003)]

Defendant IDS is operated by the Commission on Indigent Defense Services ("Commission"). Various officials and lawyer groups have the power to appoint members to the Commission, including the Governor, the Chief Justice of the Supreme Court, the Speaker of the State House of Representatives, the President Pro Tempore of the State Senate, the North Carolina Academy of Trial Lawyers, the North Carolina Public Defenders Association, the North Carolina State Bar, the North Carolina Bar Association, the North Carolina Association of Black Lawyers, and the North Carolina Association of Women Lawyers. Immediately after the Commission was formed, it initiated a new system for the appointment of counsel for indigent defendants accused of capital crimes. Now IDS appoints attorneys for capital defendants and creates and maintains standards for those attorneys. This IDS appointment system replaces the previous practice of attorney appointments being made by trial judges. At first, trial courts continued to appoint attorneys to represent indigent defendants who were charged with non-capital offenses. The IDS plans were to begin appointing attorneys for non-capital defendants as well, after further study of the judiciary's appointment system. Indeed, we take judicial notice that appointment of counsel in non-capital cases by IDS has commenced since the briefs were filed in this appeal.

Plaintiffs filed this lawsuit in June 2001, claiming that the Indigent Defense Services Act and the creation of the IDS were unconstitutional. Plaintiffs and defendants both moved for summary judgment. The trial court denied plaintiffs' motion but allowed defendants' motion for summary judgment. Plaintiffs appeal.

Plaintiffs contend that the creation of IDS violates the North Carolina Constitution's central principle of separation of powers. We disagree.

Article I, § 6 of the Constitution of North Carolina mandates that "[t]he legislative, executive, and supreme judicial powers of the State government shall be forever separate and distinct from each other." The power of the judicial branch of government is outlined as follows:

The judicial power of the State shall, except as provided in Section 3 of this Article, be vested in a Court for the Trial of Impeachments and in a General Court of Justice. The General Assembly shall have no power to deprive the judicial department of any power or jurisdiction that rightfully pertains to it as a co-

ordinate department of the government, nor shall it establish or authorize any courts other than as permitted by this Article.

N.C. Const. Art IV, § 1.

Traditionally in North Carolina trial court judges have appointed counsel for indigent defendants. Plaintiffs argue that the appointment of an attorney for an indigent defendant is both the power and responsibility of the judicial branch. Plaintiffs state that the Constitution of the United States, in addition to the Constitution of North Carolina, requires trial judges to insure that defendants are appropriately represented by qualified counsel. According to plaintiffs, that responsibility cannot be fulfilled by the creation of the IDS.

In order to show that an act of the General Assembly is unconstitutional, plaintiffs face a heavy burden of persuasion. "[E]very presumption favors the validity of a statute. It will not be declared invalid unless its unconstitutionality be determined beyond reasonable doubt." *Baker v. Martin*, 330 N.C. 331, 334, 410 S.E.2d 887, 889 (1991). "[I]f there is any doubt as to the Legislature's power to act in any given case, the doubt should be resolved in favor of the Legislature's action." *Baker*, 330 N.C. at 338, 410 S.E.2d at 891 (quoting *County of Fresno v. State of California*, 268 Cal. Rptr. 266 (Cal. App. 5 Dist. 1990)). "[T]his Court gives acts of the General Assembly great deference, and a statute will not be declared unconstitutional under our Constitution unless the Constitution clearly prohibits that statute." *In re Spivey*, 345 N.C. 404, 413, 480 S.E.2d 693, 698 (1997). Here, plaintiffs failed to meet their burden to show that the Indigent Defense Services Act was constitutionally unsound.

A violation of the separation of powers required by the North Carolina Constitution occurs when one branch of state government exercises powers that are reserved for another branch of state government. These violations have occurred several times in the history of our state. *See State ex rel. Wallace v. Bone and Barkalow v. Harrington*, 304 N.C. 591, 286 S.E.2d 79 (1982) (holding that members of the General Assembly could not concurrently hold membership on the Environmental Management Commission, an executive branch agency, without violating the separate power of executive branch); *State v. Elam*, 302 N.C. 157, 273 S.E.2d 661 (1981) (allowing the General Assembly to make rules of practice and procedure for the state's appellate courts would violate the separation of powers, because those powers were reserved for the Supreme Court by Art.IV,

§ 13(2) of the Constitution of North Carolina); and *Person v. Watts*, 184 N.C. 499, 115 S.E.2d 336 (1922) (granting a taxpayer's request that the judiciary force the collection of taxes on stockholder income would violate the legislature's constitutional control over the power of taxation). Each of these cases dealt with the exercise of a power by one branch of government when the power was specifically outlined by the state constitution as belonging to another branch.

Here, no provision of the state constitution exists that commits the power and responsibility of appointing and compensating attorneys for indigent criminal defendants to any particular branch of the state government. Although a specific and exclusive grant of power to appoint counsel is not explicitly given in the North Carolina Constitution, a branch of state government may also have inherent powers that are protected from encroachment by the separation of powers clause. These "inherent powers" have been defined as those powers "belonging to [a branch] by virtue of its being one of three separate, coordinate branches of the government." *In re Alamance County Court Facilities*, 329 N.C. 84, 93, 405 S.E.2d 125, 129 (1991). The inherent powers of the judicial branch are the powers which are "essential to the existence of the court and the orderly and efficient exercise of the administration of justice." *Beard v. The N.C. State Bar*, 320 N.C. 126, 129, 357 S.E.2d 694, 696 (1987); *see State v. Rorie*, 348 N.C. 266, 270, 500 S.E.2d 77, 80 (1998).

Plaintiffs contend that the appointment of counsel for indigent defendants lies within the inherent powers of the judiciary. We disagree. Our history has established that the power held by the North Carolina judiciary in attorney-client matters is that of supervision rather than selection. The trial court has the inherent power to regulate attorney conduct. "This power is based upon the relationship of the attorney to the court and the authority which the court has over its own officers to prevent them from, or punish them for, committing acts of dishonesty or impropriety calculated to bring contempt upon the administration of justice." *Gardner v. N.C. State Bar*, 316 N.C. 285, 287, 341 S.E.2d 517, 519 (1986). The inherent power of the judiciary to discipline attorneys for misconduct is shared concurrently with the North Carolina State Bar. *See Gardner*, 316 N.C. at 288, 341 S.E.2d at 519. However, the judiciary holds the power to supervise, punish and regulate the attorneys that appear before it. *See Alamance County*, 329 N.C. 84, 405 S.E.2d 125 (1991); *Beard*, 320 N.C. 126, 357 S.E.2d 694 (1987); *Gardner*, 316 N.C. 285, 341 S.E.2d 517 (1986); *In re Burton*, 257 N.C. 534, 126 S.E.2d 581 (1962); *Swenson v. Thibaut*, 39

N.C. App. 77, 250 S.E.2d 279 (1978), *disc. review denied by* 296 N.C. 740, 254 S.E.2d 181 (1979).

In contrast to the judiciary's vigilant regulation and supervision of attorneys, the judiciary does not routinely select counsel for non-indigent individuals appearing before it. Most litigants, whether involved in civil or criminal matters, retain and arrange to compensate their own attorneys privately. A significant number of litigants appear pro se to represent themselves. Under the previous system, the judiciary only stepped into the selection process when there was a complete absence of counsel in a criminal matter involving an indigent defendant. This judicial intervention was necessitated by its supervision power because the complete absence of counsel is the ultimate form of attorney inadequacy. *See United States v. Cronic*, 466 U.S. 648, 658-59, 80 L. Ed. 2d 657, 667-68 (1984) ("There are, however, circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified. Most obvious, of course, is the complete denial of counsel."). In such situations, the power to appoint a defense attorney fell to the trial judiciary by default as part of its power to ensure a fair trial to criminal defendants, rather than as a power inherent to that branch of government. *See Gideon v. Wainwright*, 372 U.S. 335, 344, 9 L. Ed. 2d 799, 805 (1963) ("Not only [precedent] but also reason and reflection require us to recognize that in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him."). The responsibility of fulfilling the constitutional requirement that an attorney should be provided for indigent criminal defendants is not relegated to the judiciary by any federal or North Carolina case. If another part of state government undertakes the responsibility of appointing and compensating counsel, the judicial branch will continue to function as it currently does, with the primary emphasis on interpretation of the law and supervision of the performance of all counsel to assure the adequate representation of criminal defendants.

Under the proposed system, the judiciary's ability to supervise the attorneys before it will remain. If an attorney appointed by IDS provides inadequate or ineffective counsel or violates court rules, the trial court retains the power to punish, remove or replace him. Because the judiciary retains the inherent power to supervise and discipline the attorneys before it, the legislation at issue here is not inconsistent with the separation of powers doctrine mandated by the North Carolina Constitution. Accordingly, we hold that there is

no genuine issue of material fact and that defendants are entitled to judgment as a matter of law. For the reasons stated above, we affirm.

Affirmed.

Judges McCULLOUGH and ELMORE concur.