THE NEWS AND OBSERVER PUBLISHING COMPANY, Plaintiff v. MICHAEL F. EASLEY, In his capacity as Governor of the State of North Carolina, Defendant

No. COA06-132

(Filed 6 March 2007)

## 1. Jurisdiction— subject matter—Public Records Law— clemency records—meaning of constitutional provision

The trial court did not err by concluding that it had subject matter jurisdiction to determine whether defendant Governor was required to produce, under North Carolina's Public Records Law, records relating to applications for clemency, because: (1) the case does not involve judicial review of the Governor's exercise of clemency power, but instead whether plaintiff is entitled under the Public Records Law to certain clemency records within the possession of the Governor; (2) the issues of this case can only be resolved by construing the meaning of the constitutional provision granting the clemency power to the Governor, N.C. Const. art. III, § 5(6); and (3) it is a fundamental responsibility of the courts to determine how the constitution should be construed.

## 2. Governor; Public Records— clemency records—Public Records Law inapplicable

The trial court did not err by dismissing plaintiff's lawsuit under N.C.G.S. § 1A-1, Rule 12(b)(6) and by refusing to require defendant Governor to produce, under North Carolina's Public Records Law, N.C.G.S. §§ 132-1 through 132-10, records relating to applications for clemency, because: (1) N.C. Const. art. III, § 5(6) carves out a limited area in which the General Assembly may exercise its authority as to clemency relative to the manner

of applying for pardons, and all other clemency authority rests with the Governor; (2) legislation such as the Public Records Law, which does not specifically reference clemency, cannot be allowed to intrude upon the Governor's clemency authority; and (3) although the Governor's counsel urged the Court of Appeals during oral arguments to conclude that N.C.G.S. § 147-16(a)(1) is unconstitutional, a constitutional question will not be addressed unless it was raised and passed upon in the court below.

Appeal by plaintiff and defendant from order entered 24 October 2005 by Judge Evelyn W. Hill in Wake County Superior Court. Heard in the Court of Appeals 23 August 2006.

*Everett Gaskins Hancock & Stevens, LLP, by Hugh Stevens and C. Amanda Martin, for plaintiff.*

*Attorney General Roy Cooper, by Legal Counsel to Governor Easley Andrew A. Vanore, Jr. and Special Deputy Attorney General W. Dale Talbert, for defendant.*

GEER, Judge.

This appeal arises out of the efforts of the News and Observer Publishing Company (the "N&O") to require Governor Michael F. Easley to produce, under North Carolina's Public Records Law, N.C. Gen. Stat. §§ 132-1 through 132-10 (2005), records relating to applications for clemency. Although the Governor agreed to voluntarily provide the N&O with certain clemency records, he specifically declined to produce others. The superior court dismissed the N&O's lawsuit to obtain these records under the Public Records Law on the grounds that it failed to state a claim for relief. N.C.R. Civ. P. 12(b)(6). In doing so, however, the court also denied the Governor's motion pursuant to N.C.R. Civ. P. 12(b)(1), rejecting the Governor's position that the N&O's complaint presented a non-justiciable political question. Both parties have appealed.

Because the issues of this case can only be resolved by construing the meaning of the constitutional provision granting the clemency power to the Governor, N.C. Const. art. III, § 5(6), and because it is a fundamental responsibility of the courts to determine how the constitution should be construed, we agree with the superior court that subject matter jurisdiction exists. Nothing in this case requires a court to intrude upon the clemency determinations of the Governor. Instead, we are required only to identify where the line should be

drawn, given the separation of powers doctrine, between the Executive Branch and the Legislature when it comes to clemency. There can be no doubt that we have the power and the responsibility to do so.

With respect to the N&O's request for clemency records, we hold that N.C. Const. art. III, § 5(6) carves out a limited area in which the General Assembly may exercise its authority as to clemency. The constitution expressly allows the General Assembly to enact legislation "relative to the manner of applying for pardons." *Id.* All other clemency authority rests with the Governor. We have further concluded that this constitutional provision requires that the legislation specifically relate "to the manner of applying for pardons" and, therefore, legislation such as the Public Records Law, which does not specifically reference clemency, cannot be allowed to intrude upon the Governor's clemency authority. We, therefore, uphold the trial court's dismissal of the N&O's lawsuit pursuant to N.C.R. Civ. P. 12(b)(6).

---

On 26 May 2005, the N&O requested the following records received or created by Governor Easley in connection with requests for clemency:

> 1. Each application for pardon received by Governor Easley during his tenure in office. As used herein, the term "application for pardon" means the documents defined in G.S. § 147-21 and all other records of any kind constituting or reflecting expressions of support for the application, including but not limited to letters and records of telephone calls to or personal conversations with the governor.
>
> 2. The register of applications for pardons prescribed by G.S. § 147-16(a)(1).
>
> 3. All records of any kind received by the governor that constitute or reflect support for or opposition to a request for pardon, reprieve or commutation.

The Governor's office responded that it would voluntarily make available "(1) all applications for clemency, including the indictment, verdict and judgment of the court, (2) the names of those supporting the application, and (3) any document granting clemency." Other clemency records, described as "written communications of support or opposition to the clemency application," would not, however, be provided.

On 5 July 2005, the N&O filed a complaint in Wake County Superior Court challenging the Governor's decision. The complaint asserted that the requested clemency records were "public records" under the North Carolina Public Records Law and, therefore, that the N&O was entitled to an order compelling Governor Easley to disclose them. The Governor moved to dismiss the N&O's complaint under N.C.R. Civ. P. 12(b)(1) and 12(b)(6). On 24 October 2005, Judge Evelyn W. Hill denied Governor Easley's motion to dismiss under Rule 12(b)(1), but granted his motion under Rule 12(b)(6). Both parties have timely appealed to this Court.

## Discussion

[1] On appeal, Governor Easley—in arguing both the lack of subject matter jurisdiction and the inapplicability of the Public Records Law—relies almost entirely on *Bacon v. Lee*, 353 N.C. 696, 549 S.E.2d 840, *cert. denied*, 533 U.S. 975, 150 L. Ed. 2d 804, 122 S. Ct. 22 (2001). The Governor contends, citing *Bacon*, that the clemency power rests exclusively with the Governor and, therefore, that any legislative enactment impinging upon the executive's clemency authority runs afoul of separation of powers principles. According to the Governor, the trial court thus erred by failing to dismiss the N&O's claims for lack of subject matter jurisdiction.

In contrast, the N&O points to *News & Observer Pub. Co. v. Poole*, 330 N.C. 465, 412 S.E.2d 7 (1992), and argues that *Poole* holds that the Public Records Law never offends separation of powers principles. According to the N&O, *Poole* subjects at least some clemency records to the Public Records Law even if clemency authority rests only with the Governor.

Further, both parties assert various public policy arguments in support of their respective positions. The N&O points to the need for public understanding and oversight of the Governor's use of the clemency power, while the Governor emphasizes his need to obtain candid and confidential advice both in support of and opposition to clemency requests. These arguments, however, beg the question: Which branch of government has the power to decide policy with respect to questions of clemency? *See Neuse River Found., Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 118, 574 S.E.2d 48, 54 (2002) ("It is critical for our purposes to remain focused on North Carolina's timeless separation of powers doctrine rather than be distracted by public policy debate embedded in any ephemeral issue of a case."), *disc. review denied*, 356 N.C. 675, 577 S.E.2d 628 (2003).

The question posed by this appeal is not resolved by either *Bacon* or *Poole*, but rather must be decided based on the language of our constitution's provision with respect to the clemency power. That provision states:

> *Clemency.* The Governor may grant reprieves, commutations, and pardons, after conviction, for all offenses (except in cases of impeachment), upon such conditions as he may think proper, subject to regulations prescribed by law relative to the manner of applying for pardons.

N.C. Const. art. III, § 5(6).

As the Governor contends, it is " 'well established that the . . . courts will not adjudicate political questions.' " *Bacon*, 353 N.C. at 717, 549 S.E.2d at 854 (omission in original) (quoting *Powell v. McCormack*, 395 U.S. 486, 518, 23 L. Ed. 2d 491, 515, 89 S. Ct. 1944, 1962 (1969)). Our Supreme Court has held that "[a] question may be held nonjusticiable under this doctrine if it involves 'a textually demonstrable constitutional commitment of the issue to a coordinate political department.' " *Id.* (quoting *Baker v. Carr*, 369 U.S. 186, 217, 7 L. Ed. 2d 663, 686, 82 S. Ct. 691, 710 (1962)). In support of his argument that the executive's control over clemency documents presents such a political question, the Governor points to our Supreme Court's statement in *Bacon* that "the State Constitution expressly commits the substance of the clemency power to the sole discretion of the Governor." *Id.*

The textual commitment referred to in *Bacon*, however, is not absolute. Although "the power to grant or deny clemency [lies in] the sole discretion of the Governor," *id.* at 721, 549 S.E.2d at 857, our constitution explicitly provides that this power is "subject to regulations prescribed by law relative to the manner of applying for pardons," N.C. Const. art. III, § 5(6). This division of authority between the Governor and the General Assembly has long been recognized by our Supreme Court. *See State v. Yates*, 183 N.C. 754, 756, 111 S.E. 337, 338 (1922) (noting that the General Assembly had exercised "the authority granted in the provision [of the state constitution]" by "prescrib[ing] certain statutory duties which are to be observed by the applicant"). The Court in *Bacon* did not address the meaning of the provision in the constitution allocating some degree of authority to the General Assembly, but rather held only that "judicial review *of the exercise of clemency power* would unreasonably dis-

rupt a core power of the executive." 353 N.C. at 717, 549 S.E.2d at 854 (emphasis added).

This case does not involve judicial review of the Governor's exercise of clemency power. Instead, the question before the Court is whether the N&O is entitled, under the Public Records Law, to certain clemency records within the possession of the Governor. The answer to that question turns not on a political question, but on the meaning of our constitution's proviso that the Governor's power is subject to legislation "relative to the manner of applying for pardons."

The principle that questions of constitutional and statutory interpretation are within the subject matter jurisdiction of the judiciary is just as well established and fundamental to the operation of our government as the doctrine of separation of powers. *See, e.g., Leandro v. State*, 346 N.C. 336, 345, 488 S.E.2d 249, 253 (1997) ("It has long been understood that it is the duty of the courts to determine the meaning of the requirements of our Constitution."). *See also Bayard v. Singleton*, 1 N.C. 5, 1 N.C. (Mart.) 48 (1787) (adopting doctrine of judicial review and concluding the judiciary may declare acts of the legislature unconstitutional). Because the outcome of this litigation is governed by the meaning of N.C. Const. art. III, § 5(6), we conclude that the judicial branch has authority to resolve this dispute, and we reject Governor Easley's challenge to our subject matter jurisdiction. The trial court, therefore, did not err in denying the Governor's motion to dismiss for lack of subject matter jurisdiction.

[2] We turn now to the question whether the North Carolina Public Records Law can be invoked to require the Governor to produce the disputed clemency records. That legislation provides a right of access to "[t]he public records and public information compiled by the agencies of North Carolina government." N.C. Gen. Stat. § 132-1(b) (2005). This right of access is broadly enforceable by "[a]ny person who is . . . denied copies of public records." N.C. Gen. Stat. § 132-9(a) (2005).

The Governor argues that applying the Public Records Law to clemency documents would violate separation of powers principles. "[F]or more than 200 years, [North Carolina] has strictly adhered to the principle of separation of powers." *State ex rel. Wallace v. Bone*, 304 N.C. 591, 599, 286 S.E.2d 79, 83 (1982). *See also* N.C. Const. art I, § 6 ("The legislative, executive, and supreme judicial powers of the State government shall be forever separate and distinct from each other."). This principle, of course, distributes the power to make law

to the legislature, the power to execute law to the executive, and the power to interpret law to the judiciary. *Advisory Opinion In re Separation of Powers*, 305 N.C. 767, 774, 295 S.E.2d 589, 593 (1982). "A violation of the separation of powers required by the North Carolina Constitution occurs when one branch of state government exercises powers that are reserved for another branch of state government." *Ivarsson v. Office of Indigent Def. Servs.*, 156 N.C. App. 628, 631, 577 S.E.2d 650, 652, *disc. review denied*, 357 N.C. 250, 582 S.E.2d 269 (2003).

In response to the Governor's argument, the N&O relies upon *Poole*, arguing that the Supreme Court held that application of the Public Records Law to require the executive branch to make documents public does not implicate the separation of powers doctrine. The N&O points out that the Court reasoned: "The only decision cited by defendants bearing on the separation of powers doctrine, [*Wallace v. Bone*], involved two branches of government interfacing with each other. That decision is inapposite here. The Public Records Law allows intrusion not by the legislature, or any other branch of government, but by the public. A policy of open government does not infringe on the independence of governmental branches. Statutes affecting other branches of government do not automatically raise separation of powers problems." *Poole*, 330 N.C. at 484, 412 S.E.2d at 18.

We disagree with the N&O's view that *Poole* necessarily held that the Public Records Law could never raise separation of powers issues. The defendants in *Poole* were asking the Court to adopt a "preliminary draft" exception to the Public Records Law to protect from disclosure draft reports resulting from an investigation of the N.C. State University basketball program. The Court's holding regarding the separation of powers rejected the defendants' argument that a "preliminary draft" exception was necessary "to prevent the legislature from intruding into the decision-making processes of other government branches . . . ." *Id.* In rendering its holding, the Court emphasized that defendant had "cited no controlling authority . . . *and failed to cite or rely on the state Constitution* . . . ." *Id.* (emphasis added).

This case, however, involves a specific, broad constitutional commitment of power to the executive branch and an accompanying narrow grant of authority to the legislature. N.C. Const. art. III, § 5(6). Consequently, what was missing in *Poole*—an express constitutional grant and limitation of authority—is present here. When considering other specific grants of power to the Governor in N.C. Const. art. III,

§ 5, our Supreme Court has held that a statute "constitut[ing] an encroachment upon the duty and responsibility imposed upon the Governor" in that Article "violates the principle of separation of governmental powers." *Advisory Opinion*, 305 N.C. at 776-77, 295 S.E.2d at 594 (concluding that, given state constitution's direct grant of power to the governor to administer the state's budget under Article III, § 5(3), statutory provision purporting to give legislative committee power over governor's proposed budget transfers violated separation of powers). We do not, therefore, read *Poole* as mandating production of the clemency records.

By the same token, we cannot accept the Governor's argument that the separation of powers doctrine precludes the General Assembly from enacting any legislation relating to clemency. Just as the General Assembly may not intrude on the clemency power granted to the Governor by N.C. Const. art. III, § 5(6), neither may the Governor—or the judicial branch—intrude upon "the power [that] was specifically outlined by the state constitution as belonging to" the General Assembly with respect to clemency. *Ivarsson*, 156 N.C. App. at 632, 577 S.E.2d at 653.[1]

Contrary to the Governor's position, nothing in *Bacon* holds otherwise. The Supreme Court explained in *Bacon* that "[s]ince the establishment of their first Constitution in 1776, the people of North Carolina have committed the power *to grant or deny clemency* to the sole discretion of the Governor." 353 N.C. at 721, 549 S.E.2d at 857 (emphasis added). In discussing the separation of powers, the Court observed that the constitution "vest[ed] the exclusive authority *to resolve clemency requests* in the Executive Branch . . . ." *Id.* (emphasis added). For that reason, "attacks on the Governor's *exercise of clemency power* . . . are not reviewable . . . ." *Id.* at 722, 549 S.E.2d at 857 (emphasis added). The focus in *Bacon* was on the plaintiff's request that the judicial branch intrude on the Governor's clemency authority by reviewing its exercise of that authority to grant or deny clemency requests. The Court was not asked to consider—and did not consider—the General Assembly's limited constitutional authority with respect to clemency.

---

1. The Governor urges this Court to follow *Parole Comm'n v. Lockett*, 620 So.2d 153, 158 (Fla. 1993), in which the Florida Supreme Court held that the separation of powers precluded clemency investigative files being covered by Florida's Public Records Law. We find this case unhelpful since Florida's constitutional provision vesting clemency authority in the Governor contains no language comparable to that referring to the legislature contained in the North Carolina Constitution. *See id.* at 155 (quoting the Florida constitutional provision). For the same reason, we also do not rely

Indeed, this case presents the first occasion upon which our appellate courts have been required to address our constitution's provision that the Governor's clemency authority is *"subject to regulations prescribed by law* relative to the manner of applying for pardons." N.C. Const. art. III, § 5(6) (emphasis added). Our Supreme Court has observed that " '[t]he best way to ascertain the meaning of a word or sentence in the Constitution is to read it contextually and to compare it with other words and sentences with which it stands connected.' " *State ex rel. Martin v. Preston,* 325 N.C. 438, 449, 385 S.E.2d 473, 478 (1989), (quoting *State v. Emery,* 224 N.C. 581, 583, 31 S.E.2d 858, 860 (1944)). Further, if a constitutional provision has a plain meaning, it must be followed. *Coley v. State,* 360 N.C. 493, 498, 631 S.E.2d 121, 125 (2006).

The critical question here is whether the Public Records Law may be considered a law "relative to the manner of applying for pardons." The ordinary meaning of "relative to" is (1) "having relation, reference, or application" to or (2) "pertaining, relevant, pertinent" to. *Webster's Third New Int'l Dictionary* 1916 (1968). *See also Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96-97, 77 L. Ed. 2d 490, 501, 103 S. Ct. 2890, 2900 (1983) (holding that a law "relates to" an employee benefit plan "in the normal sense of the phrase, if it has a connection with or reference to such a plan"); *Cent. States Found. v. Balka,* 256 Neb. 369, 374, 590 N.W.2d 832, 837 (1999) (noting that the ordinary meaning of the phrase "relating to" means to stand in some relation, to have bearing or concern, to pertain, to refer, to bring into association with or connection with). These common definitions all indicate that in order to fall within the scope of the authority granted to the legislature by N.C. Const. art. III, § 5(6), a statute must specifically refer or pertain to the manner of applying for pardons.

The Public Records Law was enacted pursuant to our State's general policy that "the people may obtain copies of their public records and public information free or at minimal cost unless otherwise specifically provided by law." N.C. Gen. Stat. § 132-1(b). Nothing in the Public Records Law refers to or specifically pertains to either pardons or clemency. It is not, therefore, a law "relative to the manner of applying for pardons," N.C. Const. art. III, § 5(6).

---

upon *Doe v. Nelson,* 2004 S.D. 62, 680 N.W.2d 302 (2004) (holding that the Governor had no right to seal pardons), and *Doe v. Salmon,* 135 Vt. 443, 378 A.2d 512 (1977) (holding that the records of pardons are public record). This appeal must be resolved based only on construction of North Carolina's unique constitutional provision.

Our research indicates that the legislature has enacted only two statutes that arguably fall within N.C. Const. art. III, § 5(6). The first is N.C. Gen. Stat. § 147-16(a)(1) (2005), which requires that the Governor retain "[a] register of all applications for pardon, or for commutation of any sentence, with a list of the official signatures and recommendations in favor of such application." The second is N.C. Gen. Stat. § 147-21 (2005), which provides:

> Every application for pardon must be made to the Governor in writing, signed by the party convicted, or by some person in his behalf. And every such application shall contain the grounds and reasons upon which the executive pardon is asked, and shall be in every case accompanied by a certified copy of the indictment, and the verdict and judgment of the court thereon.

The N&O sought the applications submitted pursuant to § 147-21 and the register required by § 147-16(a)(1), as well as "letters, memoranda and other documents in support of or in opposition to petitions for commutations, reprieves and pardons." At the trial level, the Governor agreed to produce (1) all applications for clemency, including the indictment, verdict and judgment of the court, (2) the names of those supporting the application, and (3) any document granting clemency.

With respect to the N&O's request for all written communications voicing support for or opposition to clemency applications, the newspaper does not refer us to any statute other than the Public Records Law that relates to such communications. Specifically, those communications do not appear to fall within the purview of either N.C. Gen. Stat. §§ 147-16(a)(1) or 147-21. Because the General Assembly has not acted with respect to the records sought, we need not address whether legislation making such records subject to the Public Records Law, or otherwise public, would be regulating the manner of applying for pardons.

Turning to N.C. Gen. Stat. §§ 147-16(a)(1) and 147-21, we note that, on appeal, the Governor asserts, for the first time, that he "has since decided he will no longer release the names of those persons supporting a clemency application because of concerns expressed by some individuals supporting clemency petitions, but who did not want their names made public." This assertion means that the Governor is declining to produce at least part of the register specified in § 147-16(a)(1). The trial court's decision to grant the motion to dismiss under Rule 12(b)(6) was, however, reached under the impres-

sion that the Governor would be producing certain records. We find it troubling that the playing field has changed on appeal.

Further, in oral argument—but not in either of the Governor's two appellate briefs—the Governor's counsel belatedly urged this Court to conclude that N.C. Gen. Stat. § 147-16(a)(1) is unconstitutional. The Attorney General's Office is certainly aware that "[i]t is a well settled rule of this Court that we will not pass upon a constitutional question unless it affirmatively appears that such question was raised and passed upon in the court below." *Powe v. Odell*, 312 N.C. 410, 416, 322 S.E.2d 762, 765 (1984). We, therefore, do not address that contention.

Nevertheless, neither § 147-16(a)(1) nor § 147-21 includes any provision specifying whether the records involved in those two statutes should be considered public records. Thus, we cannot determine that the General Assembly, in exercising its constitutional authority under N.C. Const. art. III, § 5(6), intended to provide that the application process for pardons should be subject to the Public Records Law.

The N&O argues that language specifically making such records subject to the Public Records Law "would be redundant and unnecessary, because the Public Records Law is a 'regulation' of general applicability" and "that 'regulation' contains no exemption for clemency records. . . ." This contention, however, disregards the constitution's requirement that, with respect to clemency, there must be specific and not general legislation. It is not enough that the General Assembly did not exempt clemency records from a generally-applicable statute; it must have expressly chosen to exercise its authority to include them. Because of the specific language of the constitution and the separation of powers implications, we deem it inappropriate to infer an otherwise unspecified intent.

We hold, therefore, that the N&O may not use the Public Records Law to compel Governor Easley to disclose the requested documents. The trial court, therefore, properly dismissed the N&O's complaint for failure to state a claim upon which relief could be granted.

Affirmed.

Judges CALABRIA and JACKSON concur.