HOWARD BIGGERS III, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF HOWARD BIGGERS, IV, DECEASED, AND CINDY BIGGERS, PLAINTIFFS v. BALD HEAD ISLAND, A NORTH CAROLINA MUNICIPALITY; BALD HEAD ISLAND LIMITED, A FOREIGN LIMITED PARTNERSHIP; BALD HEAD ISLAND MANAGEMENT, INC.; MITCHELL ISLAND INVESTMENTS, INC., A FOREIGN CORPORATION, AS GENERAL PARTNER OF BALD HEAD ISLAND LIMITED; AND, DOUGLAS "BUD" ODELL, DEFENDANTS

BALD HEAD ISLAND LIMITED, DEFENDANT, THIRD-PARTY PLAINTIFFS v. TIMOTHY MATTHEWS, THIRD-PARTY DEFENDANT

No. COA08-249

(Filed 15 September 2009)

## 1. Immunity— governmental immunity—discretionary powers

The trial court did not err in a negligence case by granting summary judgment in favor of defendant Village because: (1) a municipal corporation is not liable in an action for damages either for the non-exercise of, or for the manner in which, in good faith, it exercises discretionary powers of a public or legislative character; and (2) the Village's failure to adopt an ordinance requiring the installation of seatbelts on golf carts was beyond the purview of our courts.

## 2. Negligence— duty of care—renting golf cart without seatbelt—hidden danger

The trial court did not err in a negligence case by granting summary judgment in favor of defendants Limited and Odell because defendants did not breach a duty of care by renting a golf cart without a seatbelt to plaintiffs or by failing to provide warning of the purported hidden danger of falling out of a golf cart.

Appeal by plaintiffs from orders entered 10 September 2007, 11 September 2007 and 17 September 2007 by Judge Ola M. Lewis in Brunswick County Superior Court. Heard in the Court of Appeals 24 September 2008.

*Jones Martin Parris & Tessener Law Offices, P.L.L.C., by H. Forest Horne, Jr. and Kristen L. Beightol, for plaintiffs-appellants.*

*Patterson Dilthey, LLP, by Ronald C. Dilthey, for Bald Head Island Limited, defendants-appellees.*

*Crossley McIntosh Collier Hanley & Edes, P.L.L.C., by Brian E. Edes, for Village of Bald Head Island, defendants-appellees.*

*Brown, Crump, Vanore & Tierney, L.L.P., by Derek M. Crump, for Douglas "Bud" Odell, defendants-appellees.*

JACKSON, Judge.

Howard Biggers, III ("Mr. Biggers") and Cindy Biggers ("Mrs. Biggers") (collectively, "plaintiffs") parents of Howard Biggers, IV ("Howard") and Garrett Biggers ("Garrett") appeal the trial court's orders granting summary judgment in favor of the Village of Bald Head Island ("the Village"), Bald Head Island Limited ("Limited"), and Douglas "Bud" Odell ("Odell") (collectively, "defendants"). For the reasons discussed herein, we affirm the trial court's orders.

Early in 2003, plaintiffs planned a family vacation to the Village for the upcoming summer. Plaintiffs previously had vacationed in the Village in 1997, 1999, 2000, 2001, and 2002. On 17 March 2003, plaintiffs entered into a Guest Rental Agreement with Limited to rent a cottage and electric vehicle[1] owned by Odell for their vacation.[2]

On 28 June 2003, plaintiffs traveled to the Village with their two children, Garrett, age four, and Howard, age six, for a week-long family vacation. On 30 June 2003, Mrs. Biggers left the cottage to pick up her sister and brother-in-law, Susan Matthews ("Mrs. Matthews") and Tim Matthews ("Mr. Matthews") (collectively, "the Matthewses") from the ferry landing. Mrs. Biggers drove the golf cart provided by Odell; Garrett and Howard rode in the front seat with her. After picking up the Matthewses, the family returned to the cottage where they picked up Mr. Biggers and prepared for a day at the beach. Mrs. Biggers drove along Keelson Row and through a "reverse 'S' " turn both to and from the ferry landing.

Plaintiffs, Garrett, Howard, and the Matthewses packed the golf cart with chairs and towels, and they drove to the beach. The party again traveled along Keelson Row and through the reverse "S" turn. Shortly after arriving at the beach, Mrs. Matthews announced that Mr. Matthews's brother and sister-in-law also were coming to the

---

1. The Village is a coastal community with a maximum speed limit of eighteen miles per hour within its municipal boundaries. Therefore, bicycles and electric vehicles, such as golf carts, are common means of transportation.

2. Limited previously had entered into an exclusive rental agency agreement with Odell for the use of his property as vacation rental property. Pursuant to the agreement, Odell was responsible for providing the cottage a "four-passenger electric vehicle with side curtains, charger and fire extinguisher, registered with the Village . . . ." In exchange for a commission on the rental receipts, Limited agreed to rent the property and to perform various management and housekeeping services.

Village that day. The Matthewses, along with Howard and Garrett, left the beach and drove Odell's golf cart to pick up the Matthewses' family members.

Mr. Matthews drove the golf cart; Garrett sat in the middle of the front seat; and Howard sat on the outside of the passenger-side of the front seat. Mrs. Matthews sat in the golf cart's right, rear seat. Mrs. Matthews and Howard sang children's songs as the party again approached the reverse "S" curve on Keelson Row. As they approached the curve, Mrs. Matthews extended her right arm in a protective manner. Howard turned in his seat so that his back was facing out of the cart with his right hip pointing toward the dashboard. Howard then fell out of the cart. Mrs. Matthews yelled for Mr. Matthews to stop the cart because he did not notice that Howard had fallen out of the cart.

The Matthewses took Howard back to the cottage. Howard complained that his head hurt. Mrs. Matthews stayed with Howard at the cottage while Mr. Matthews, his brother and sister-in-law, and Garrett returned to join plaintiffs at the beach. Mr. Matthews told plaintiffs that he believed Howard was all right.

Howard's condition worsened, and Emergency Medical Services were called approximately two hours after Howard's fall. Fourteen months later, on 14 August 2004, Howard died from complications resulting from a traumatic brain injury caused by his fall from the golf cart.

On 16 September 2005, plaintiffs brought this negligence action alleging that (1) the Village negligently failed to require seatbelts for electric vehicles operating within its jurisdiction; (2) Limited negligently failed to require seatbelts in the electric vehicles owned by the property owners; and (3) Odell negligently failed to install seatbelts in his golf cart. On 8 August 2007, Limited moved for summary judgment. On 15 August 2007, both the Village and Odell moved for summary judgment. Plaintiffs appeal from the trial court's orders granting summary judgment in defendants' favor.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2007). "An issue is 'genuine' if it can be proven by substantial evidence[,] and a fact is 'material' if it would constitute or irrevocably establish any material element of a

claim or a defense." *Lowe v. Bradford*, 305 N.C. 366, 369, 289 S.E.2d 363, 366 (1982) (citing *Bone Int'l, Inc. v. Brooks*, 304 N.C. 371, 374-75, 283 S.E.2d 518, 520 (1981)).

In deciding a motion for summary judgment, a trial court must consider the evidence in the light most favorable to the non-moving party. *See Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003). If there is any evidence of a genuine issue of material fact, a motion for summary judgment should be denied. *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 471, 597 S.E.2d 674, 694 (2004). We review an order allowing summary judgment *de novo*. *Summey*, 357 N.C. at 496, 586 S.E.2d at 249.

The moving party bears the burden of showing that no triable issue of fact exists. *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985) (citing *Texaco, Inc. v. Creel*, 310 N.C. 695, 699, 314 S.E.2d 506, 508 (1984)). "Even though summary judgment is seldom appropriate in a negligence case, summary judgment may be granted in a negligence action where there are no genuine issues of material fact and the plaintiff fails to show one of the elements of negligence." *Lavelle v. Shultz*, 120 N.C. App. 857, 859, 463 S.E.2d 567, 569 (1995) (citing *Lamb v. Wedgewood South Corp.*, 308 N.C. 419, 425, 302 S.E.2d 868, 871 (1983)), *disc. rev. denied*, 342 N.C. 656, 467 S.E.2d 715 (1996). Furthermore,

> [i]n order to survive a motion for summary judgment, plaintiff must establish a *prima facie* case of negligence by showing: (1) that defendant failed to exercise proper care in the performance of a duty owed plaintiff; (2) the negligent breach of that duty was a proximate cause of plaintiff's injury; and (3) a person of ordinary prudence should have foreseen that plaintiff's injury was probable under the circumstances.

*Lavelle*, 120 N.C. App. at 859-60, 463 S.E.2d at 569 (citing *Talian v. City of Charlotte*, 98 N.C. App. 281, 283, 390 S.E.2d 737, 739 (1990), *aff'd*, 327 N.C. 629, 398 S.E.2d 330 (1990) (per curiam)) (emphasis added).

[1] In plaintiffs' first argument on appeal, plaintiffs contend that the trial court erred in granting summary judgment in favor of the Village because there is a genuine issue of material fact as to whether the Village waived its governmental immunity by purchasing liability insurance. However, plaintiffs' underlying argument is that the Village was negligent because it failed to enact an ordinance requiring the

installation of seatbelts in golf carts traveling within its municipal boundaries. We disagree.

"The legislative, executive, and supreme judicial powers of the State government shall be forever separate and distinct from each other." N.C. Const. art. I, § 6. "A violation of the separation of powers doctrine occurs when one branch of state government exercises powers that are reserved for another branch of state government." *County of Cabarrus v. Tolson*, 169 N.C. App. 636, 639, 610 S.E.2d 443, 446 (2005) (citing *Ivarsson v. Office of Indigent Def. Servs.*, 156 N.C. App. 628, 631, 577 S.E.2d 650, 652 (2003)). Thus, it long has been the rule that

> when a general authority is given to a municipal corporation, to be exercised through its proper legislative officers, to make ordinances for the good government, health and safety of the inhabitants and their property, it is thereby left entirely to the discretion of those authorities to determine what ordinances are proper for those purposes.

*Hill v. The Bd. of Alderman of the City of Charlotte*, 72 N.C. 55, 56 (1875) (per curiam) (holding that the plaintiff could not recover from the city for fire damage to his property caused by firecrackers because the decision of the municipal authorities to suspend temporarily an ordinance prohibiting firecrackers was within the authorities' discretion). Otherwise, a court "would arrogate to itself the legislative power of the city authorities, and it cannot be supposed possible that any court will be guilty of such an usurpation." *Id.* at 57. The Court explained that "the question, whether [the municipal authorities' decision is] wise or not, is not for a court to determine." *Id.* Therefore, "*[a] municipal corporation is not liable to an action for damages either for the non-exercise of, or for the manner in which, in good faith, it exercises discretionary powers of a public or legislative character.*" *Id.* (emphasis added) (citation and quotation marks omitted).

In a case similar to the case *sub judice, Goodwin v. Town of Reidsville*, 160 N.C. 411, 76 S.E. 232 (1912), our Supreme Court affirmed the trial court's entry of nonsuit against the plaintiff's wrongful death claim against the town. *Goodwin*, 160 N.C. at 414, 76 S.E. at 234. The decedent was driving along the town's street when he was struck and killed by a baseball from a game being played by boys in the street. *Goodwin*, 160 N.C. at 412, 76 S.E. at 233. The town knew of the boys' custom of playing baseball in the street, but the town failed

to adopt or enforce an ordinance prohibiting their activities. *Id.* Notwithstanding the plaintiff's tragic loss, the town's decision was inviolate. *Goodwin*, 160 N.C. at 414, 76 S.E. at 234.

Accordingly, in view of our well-established precedent, the Village's failure to adopt an ordinance requiring the installation of seatbelts on golf carts is beyond the purview of our courts. Therefore, we hold that the trial court properly entered summary judgment in favor of the Village.

**[2]** Next, plaintiffs argue that the trial court erred in granting summary judgment in favor of Limited and Odell. Specifically, plaintiffs contend that Limited and Odell breached a duty of care by (1) renting a golf cart without a seatbelt to plaintiffs, and (2) failing to provide warning of the purportedly hidden danger of falling out of the golf cart. We disagree.

In *Roberts v. William N. & Kate B. Reynolds Mem'l Park*, 281 N.C. 48, 53, 187 S.E.2d 721, 724 (1972), our Supreme Court instructed that a bailor for hire has a duty "to see that the vehicle bailed is in good condition," and although the bailor is not an insurer, "he is liable for injury to the bailee or a third person proximately caused by a defect in the vehicle of which [the bailor] had knowledge or which he could have discovered [through] reasonable care and inspection." *Id.* In *Roberts*, the plaintiff was injured by a golf cart when the cart's brakes failed to perform properly. *Id.* The plaintiff alleged that the golf cart he had rented was equipped with defective brakes. *Roberts*, 281 N.C. at 54, 187 S.E.2d at 724. The plaintiff subsequently presented evidence that the golf cart was designed so that the cart's brakes should work regardless of whether the cart traveled backwards or forwards. *Roberts*, 281 N.C. at 52, 187 S.E.2d at 723. Upon those facts, the Court held that the plaintiff had presented sufficient evidence that the bailor was liable for the hidden, defective condition of the brakes such that the plaintiff could reach the jury. *Roberts*, 281 N.C. at 60, 187 S.E.2d at 728.

In the case *sub judice*, we initially note that although plaintiffs' arguments tend toward the contrary, plaintiffs' complaint sounds in negligence, not products liability, and the undisputed fact remains that the golf cart was manufactured without seatbelts. With the exception of three superficial modifications[3], the cart was in the

---

3. Pursuant to his agreement with Limited, Odell added (1) a sticker which instructed the user as to basic cart operation and alerted the cart's user to additional vacation and safety reference materials in the rental house, and (2) a fire extinguisher;

same or similar condition as it had been provided to Odell by the manufacturer.

In addition, the record contains an invoice for bi-monthly service to the golf cart. The invoice is dated 12 June 2003—approximately two weeks prior to Howard's fall. No description of special repairs, maintenance, or other service appears on the invoice. Plaintiffs make no argument that Odell failed to meet his duty of exercising reasonable care and inspection. Nor do they argue that the golf cart was not in good operating condition. Here, any defect alleged by plaintiffs— the absence of a seatbelt—is an open and obvious condition, and the condition in which the golf cart originally was provided to Odell by the manufacturer.

Mr. Matthews testified that he (1) had played approximately fifteen rounds of golf per year, (2) had belonged to a country club several years prior to Howard's fall, (3) had used a golf cart whenever he had played golf, and (4) never had seen a golf cart with a seatbelt prior to his vacation with plaintiffs. We cannot find in our case law an affirmative duty for defendants such as Limited and Odell to undertake to alter a commonly manufactured product, such as a golf cart. Therefore, we hold that Limited and Odell met the duty of care owed by bailors of vehicles to bailees. *See Roberts*, 281 N.C. at 53, 187 S.E.2d at 724.

In addition to being properly maintained, the golf cart also was insured as required by the Village and by Limited's contract with Odell. Therefore, it appears that Odell and Limited were in compliance with any contractual duties or duties established by the Village. Plaintiff cites no other source from which a duty of care may arise.

Upon review, we are convinced that plaintiff's negligence claims against Limited and Odell fail for want of duty, or where a duty does exist, for want of breach. Accordingly, we affirm the trial court's entry of summary judgment in favor of Limited and Odell. *See Lavelle*, 120 N.C. App. at 859, 463 S.E.2d at 569.

While we acknowledge the tragic circumstances presented, the law of negligence as regards defendants in the case *sub judice* does not provide a remedy for plaintiffs' loss. For the foregoing reasons, we affirm the trial court's orders granting summary judgment in favor of defendants.

---

and (3) Odell testified at his deposition that he also added a "wind/rain screen" as an "optional extra" after purchasing the cart, but that everything other than the screen and the fire extinguisher "was standard with the cart."

Affirmed.

Judges STEELMAN and STROUD concur.