STATE v. MINTON

[223 N.C. App. 319 (2012)]

STATE OF NORTH CAROLINA v. JONATHAN RUSS MINTON, DEFENDANT

No. COA12-243

(Filed 6 November 2012)

### 1. Conversion—by bailee—motion to dismiss—intent to defraud

The trial court did not err by failing to grant defendant's motion to dismiss the conversion of property by bailee charges. The State presented substantial evidence defendant intended to defraud Mr. Center by failing to comply with the terms of their agreement and failing to use the money for its intended purpose.

### 2. Damages and Remedies—restitution—amount—ability to pay

The trial court did not err in a conversion of property by bailee case by ordering defendant pay $5,000 in restitution. The evidence at trial supported the ten convictions for conversion, and thus, it supported the restitution amount of ten $500 payments. Further, the trial court complied with N.C.G.S. § 15A-1340.36(a) because evidence of defendant's financial condition and ability to pay restitution was established at trial.

Appeal by defendant from order entered 22 September 2011 by Judge Lindsay R. Davis, Jr. in Wilkes County Superior Court. Heard in the Court of Appeals 29 August 2012.

*Attorney General Roy Cooper, by Special Deputy Attorney General Gayl M. Manthei, for the State.*

*Charlotte Gail Blake for defendant-appellant.*

HUNTER, Robert C., Judge.

Defendant Jonathan Minton appeals from judgment entered against him after a jury found him guilty of ten counts of conversion of property by bailee in violation of N.C. Gen. Stat. § 14-168.1. On appeal, defendant argues that the trial court erred by: (1) denying defendant's motion to dismiss; and (2) ordering defendant to pay $5000 in restitution. After careful review, we find no error.

Background

Defendant was indicted for ten counts of obtaining property by false pretenses and ten counts of conversion of property by bailee ("conversion"). The cases were joined for trial.

The evidence at trial tended to establish the following: In 2005, defendant agreed to buy real property from Harold and Teresa Cantrell (collectively "the Cantrells" or, individually, "Mr. Cantrell" or "Ms. Cantrell") in Wilkes County. Under the terms of their agreement, defendant would pay the Cantrells $1000 per month for a total of 80 months. Once defendant paid them $75,000, the Cantrells would deed the property to him. The parties all signed a promissory note setting forth the details of this agreement. The property was a tract of land that included two trailers, a barn, and two chicken houses. Ms. Cantrell, who keeps the books on the property, testified that defendant paid a total of $35,000, but he has not made a monthly payment since July 2008.

In 2005, defendant approached Ed Center ("Mr. Center") to see if he was interested in paying half of the monthly payment. Mr. Center contended that he had a verbal agreement with defendant to pay half of the monthly payment in order to eventually share ownership of the land. However, defendant alleged that they only had a rental agreement whereby Mr. Center would rent one of the trailers on the property, and they never had an agreement to share ownership. Mr. Center testified that he began making monthly payments to defendant in 2005; however, he does not have any receipts for those payments.

Sometime in August 2009, Mr. Center claimed that defendant told him that he had not made a payment to Mr. Cantrell in nine months. In September 2009, after defendant told him they could avoid eviction by paying Mr. Cantrell $5000, Mr. Center gave defendant a certified check in the amount of $2500 to give Mr. Cantrell. The check was dated 29 September 2009.

At the end of the State's evidence, defendant made a motion to dismiss all charges. The trial court dismissed the ten counts of obtaining property by false pretenses because the State presented no evidence other than defendant's failure to comply with his contractual obligation to establish his intent to defraud. However, the trial court denied defendant's motion to dismiss the ten counts of conversion.

The trial court instructed the jury that the ten counts of conversion were based on the ten alleged acts of conversion defendant com-

mitted each month, when Mr. Center paid him $500, from August 2008 to May 2009. The jury found defendant guilty of all ten counts.

Defendant was sentenced to six to eight months, but the trial court suspended his sentence and placed defendant on 36 months of supervised probation. At sentencing, the State requested the trial court order defendant to pay $5000 in restitution based on the ten payments of $500 from Mr. Center, which defendant was convicted of converting. The trial court granted the State's request and ordered defendant to pay Mr. Center $5000 restitution.

## Arguments

**[1]** Defendant first argues that the trial court erred by not granting defendant's motion to dismiss the conversion charges because the State failed to present substantial evidence that defendant possessed the necessary intent to defraud. Specifically, defendant contends that the only evidence the State offered to establish intent was defendant's failure to comply with an alleged contractual obligation. Since N.C. Gen. Stat. § 14-100(b) specifically states that evidence of nonfulfillment of a contract obligation, standing alone, does not establish the requisite intent to sustain an obtaining property by false pretenses charge, defendant argues that nonfulfillment of a contract obligation is not, or should not be, enough to establish the requisite intent for a conversion charge. We do not agree.

"This Court reviews the trial court's denial of a motion to dismiss *de novo.*" *State v. Smith,* 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Fritsch,* 351 N.C. 373, 378, 526 S.E.2d 451, 455, *cert. denied,* 531 U.S. 890, 148 L. Ed. 2d 150 (2000) (quoting *State v. Powell,* 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith,* 300 N.C. 71, 78, 265 S.E.2d 164, 169 (1980).

Pursuant to N.C. Gen. Stat. § 14-168.1 (2011),

> [e]very person entrusted with any property as bailee . . . who fraudulently converts the same . . . to his own use, or secretes it with a fraudulent intent to convert it to his own use, shall be guilty of a Class 1 misdemeanor. If, however, the value of the

property converted . . . is in excess of four hundred dollars
($400.00), every person so converting or secreting it is guilty of
a Class H felony.

Bailment is defined as the "delivery of personal property by one per-
son (the *bailor*) to another (the *bailee*) who holds the property for a
certain purpose, usu. [sic] under an express or implied-in-fact con-
tract." *Black's Law Dictionary* 163 (9th ed. 2009). Intent to defraud,
as in cases of embezzlement, may be established by direct evidence
or inferences from the facts and circumstances. *See generally State
v. McLean*, 209 N.C. 38, 40, 182 S.E. 700, 701-02 (noting that for pur-
poses of embezzlement, fraudulent intent "may be shown by direct
evidence, or by evidence of facts and circumstances from which it
may reasonably be inferred").

Here, defendant's argument is based on his contention that
because "[e]vidence of nonfulfillment of a contract obligation" is not
enough to establish intent for an obtaining property by false pre-
tenses charge, N.C. Gen. Stat. § 14-100(b), this evidence should not be
sufficient to establish the requisite intent to defraud for a conversion
charge. While the legislature decided to specifically include that lim-
itation in the obtaining property by false pretenses statute, it chose to
not include it in the conversion statute. If we were to accept defend-
ant's argument, we would have to rewrite the statute, not interpret it,
to include that limitation, and we are without constitutional authority
to do so. *See* N.C. Const. art. I, § 6 (2011) (noting that the powers
of the legislative, judiciary, and executive branches of government
are "separate and distinct"); *News and Observer Pub. Co. v. Easley*,
182 N.C. App. 14, 19-20, 641 S.E.2d 698, 702 (2007) (holding that
"[art. I, § 6] . . . distributes the power to make law to the legislature,
the power to execute law to the executive, and the power to interpret
law to the judiciary"). Therefore, defendant's argument is without merit.

Moreover, a review of the record shows that the State presented
substantial evidence that defendant intended to defraud Mr. Center.
Here, taking the evidence in a light most favorable to the State, defend-
ant and Mr. Center had an agreement where Mr. Center, the bailor,
would give defendant, the bailee, $500 for a specific purpose—to use
the money to pay the Cantrells to obtain ownership of the land.
Although defendant took Mr. Center's money, he did not use it for its
intended purpose of paying the Cantrells. This failure to do so is
established by Ms. Cantrell's testimony that defendant has not made
a payment since July 2008 even though Mr. Center testified he had
been giving defendant money in subsequent months. Therefore, the

State presented substantial evidence defendant intended to defraud Mr. Center by failing to comply with the terms of their agreement and failing to use the money for its intended purpose.

In a separate but related argument, defendant also claims that there was not substantial evidence to establish intent to defraud because the alleged contract between himself and Mr. Center would be unenforceable in civil court due to the statute of frauds. *See* N.C. Gen. Stat. § 22-2 (2011) (stating that any contracts to sell or convey land which are not "in writing and signed by the party to be charged" are void). Defendant does not cite any authority in support of his argument, and we are unable to find any caselaw addressing the issue of whether intent to defraud for a criminal charge may be based on a party's failure to comply with an unenforceable contract. Thus, since there is no prohibition on using unenforceable contracts to establish substantial evidence to support a conversion charge, we find defendant's argument unpersuasive.

**[2]** Next, defendant argues the trial court erred in ordering defendant pay $5000 in restitution. Specifically, defendant contends the trial court erred because the amount was not supported by the evidence, as required by N.C. Gen. Stat. § 15A-1340.36(a), and by failing to consider defendant's circumstances, in violation of N.C. Gen. Stat. § 15A-1340.36. We disagree.

Pursuant to N.C. Gen. Stat. § 15A-1340.36(a) (2011), "[t]he amount of restitution must be limited to that supported by the record." Our Court has held that "the restitution amount requested by the State must be supported by evidence adduced at trial or at sentencing." *State v. Calvino*, 179 N.C. App. 219, 223, 632 S.E.2d 839, 843 (2006) (internal quotation marks omitted). Here, the evidence at trial supported the ten convictions for conversion; thus, the evidence at trial supported the restitution amount of ten $500 payments.

In addition to ordering restitution that is supported by the evidence, N.C. Gen. Stat. § 15A-1340.36(a) also states that:

[i]n determining the amount of restitution to be made, the court shall take into consideration the resources of the defendant including all real and personal property owned by the defendant and the income derived from the property, the defendant's ability to earn, the defendant's obligation to support dependents, and any other matters that pertain to the defendant's ability to make restitution, but the court is not required to make findings of fact or conclusions of law on these matters.

In *State v. Smith*, 90 N.C. App. 161, 168, 368 S.E.2d 33, 38 (1988), *aff'd per curiam*, 323 N.C. 703, 374 S.E.2d 866, *cert. denied*, 490 U.S. 1100, 104 L. Ed. 2d 1007 (1989), this Court found that the trial court erred in ordering the defendant to pay restitution where it "did not con-sider any evidence of defendant's financial condition." Our Supreme Court has also concluded that although N.C. Gen. Stat. § 15A-1340.36(a) does not require the trial court to enter written findings of fact regarding its award of restitution, "it requires the court to take into consideration the resources of the defendant, [his] ability to earn, [his] obligation to support dependents, and such other matters as shall pertain to [his] ability to make restitution or reparation." *State v. Hunter*, 315 N.C. 371, 376, 338 S.E.2d 99, 103 (1986).

Here, during sentencing, defendant's counsel requested the trial court suspend defendant's sentence because he was married with two young children. While the trial court never inquired as to defendant's employment status or support obligations during the sentencing hearing, there was evidence presented at trial to establish defendant's ability to pay the restitution. Specifically, defendant and his wife testified that around the time they appeared in court regarding the Cantrells' attempt to evict them, sometime in May 2010, they offered to buy the land from the Cantrells for $37,500. Moreover, even though defendant is not currently working, he did testify that he had been employed in the past, and he did not offer any testimony establishing he is unable to work. Accordingly, the trial court complied with N.C. Gen. Stat. § 15A-1340.36(a) and did not err in ordering defendant to pay restitution because evidence of defendant's financial condition and ability to pay restitution was established at trial.

Conclusion

Based on the foregoing reasons, we find no error.

No error.

Judges BRYANT and STEELMAN concur.