TYSON, Judge.
Timothy Earl Richardson ("Defendant") appeals from a judgment entered upon his conviction for embezzlement. We find no error.
I. Background
A. State's Evidence
The State's evidence showed that Defendant was a sales professional employed by Clayton Homes, Inc. ("Clayton Homes"). His job responsibilities included selling manufactured homes to customers. Defendant began working at Clayton Homes in 2002 and resigned in April 2016.
In 2014, Defendant began working with Dominique Mitchell ("Ms. Mitchell") to find her a mobile home to purchase for herself and her son. In December 2015, Defendant showed Ms. Mitchell a tract of land upon which she could place her home. Defendant informed her that the price of the tract of land was $12,000.00, but that he would accept $10,000.00 for the land, if Ms. Mitchell paid in cash. On 18 December 2015, Defendant met Ms. Mitchell at the bank. Ms. Mitchell "cashed a check to pay in cash" and gave Defendant $10,000.00 in cash. Video surveillance from the bank showed Ms. Mitchell cashing the check and then giving the cash to Defendant. Defendant failed to give Ms. Mitchell any receipt for the $10,000.00 payment.
Ms. Mitchell also gave Defendant $5,085.00 in cash for a well and septic system to be installed on the tract. Defendant told her that he could not accept the payment if it was not paid in cash. Ms. Mitchell also did not receive any receipt for this payment. Sometime thereafter, Ms. Mitchell asked Defendant for the "folder," which she expected to contain receipts and the paperwork concerning expenditures for her home. Defendant instructed Ms. Mitchell to come by his office, but Defendant never gave her any paperwork. Defendant stopped answering Ms. Mitchell's repeated phone calls.
Approximately two months later, Ms. Mitchell went into the Clayton Homes' office in Rocky Mount in search of her folder. Tony Joyner ("Mr. Joyner"), a manager and Defendant's supervisor, spoke with Ms. Mitchell. Mr. Joyner informed Ms. Mitchell that Clayton Homes' records showed her paying only a $1,000.00 deposit for her home. Mr. Joyner was unable to tell Ms. Mitchell where the $15,825.00 in cash she had given Defendant was located.
On 16 January 2016, Anna Sessoms ("Ms. Sessoms"); her mother, Maggie Sessoms; and her brother, Lubin Cherry ("Mr. Cherry") (collectively "the Sessoms family"), met with Defendant at the Clayton Homes office in Rocky Mount. Maggie Sessoms and Mr. Cherry wanted to purchase a mobile home. Defendant had previously instructed Mr. Cherry to bring $12,500.00 in cash to the meeting to be used as a down payment for his new home. Mr. Cherry gave Defendant $12,500.00 in cash. Defendant said that he would deposit it into the bank.
On 30 January 2016, the Sessoms family met with Defendant a second time. Defendant told Mr. Cherry that he needed an additional $8,273.00 in cash. He also informed Maggie Sessoms that he needed $1,000.00 in cash to "buy [their] old house back." Mr. Cherry and Maggie Sessoms gave Defendant the money he requested, and Ms. Sessoms asked for receipts for all three cash payments. Defendant gave them three handwritten receipts.
After a few months with no progress, Ms. Sessoms became frustrated with the delays and demanded that the money they had already paid be returned to them. Defendant responded that "he didn't have it. He wanted to time [sic] to get the money up. Together." On 27 April 2016, the Sessoms family arrived at the Clayton Homes' office and spoke with Mr. Joyner. Ms. Sessoms showed Mr. Joyner the three receipts Defendant had given them. Mr. Joyner testified that Clayton Homes provided computer-generated receipts for customers who paid in cash. He informed the Sessoms family that "they no longer use[d] these receipts" and that there was no record of Maggie Sessoms or Mr. Cherry paying the amount of money listed on the purported receipts. Mr. Joyner opined that Defendant "had fraudulently created an older type receipt" for the Sessoms family by photocopying a single page of a Clayton Homes' receipt book.
B. Defendant's Evidence
Defendant's evidence indicated that in 2015, he started experiencing health problems, including, significant weight loss, frequent urination, and confusion. In November 2015, he was diagnosed with diabetes and Graves' disease. Defendant took medical leave at the end of January 2016 and resigned from Clayton Homes in April 2016.
On 18 December 2015, Defendant received a call from the Clayton Homes' office informing him that they could not reach Ms. Mitchell. Defendant called Ms. Mitchell, and she told him to meet her at the bank. Defendant went to the bank, but he did not remember what subsequently occurred at the bank.
In late January 2016, Defendant went to the Clayton Homes' Rocky Mount office and met with the Sessoms family. The Sessoms family gave him cash and a letter from a home lending company detailing the payoff amount for a loan. Defendant documented receiving $7,500.00 and $500.00 in cash into the Clayton Homes' computer system and gave the Sessoms family receipts for these payments. Defendant did not enter the remaining cash given to him by the Sessoms family into the computer system, because it was for him "to hold" until they had received a payoff letter. He wrote the details of the transaction on a folder. On 18 July 2016, Defendant was indicted for one count of embezzlement.
On 1 March 2017, Defendant informed a private investigator hired by his attorney that he remembered putting cash and a contract into an envelope underneath a bathroom cabinet inside the Clayton Homes' office. The private investigator went to the Clayton Homes' office and found $13,300.00 in cash and a contract where Defendant had claimed it would be. Clayton Homes determined that the cash was received from Mr. Cherry and Maggie Sessoms.
A jury found Defendant guilty of embezzlement. Defendant was sentenced to 6 to 17 months' imprisonment, which was suspended, and 36 months of supervised probation to be served as special probation. Defendant was also ordered to pay restitution in the amount of $23,558.00. Defendant entered timely notice of appeal.
II. Jurisdiction
An appeal of right lies with this Court pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 15A-1444 (2017).
III. Issues
Defendant contends that: (1) his counsel was ineffective for failing to present expert testimony regarding Defendant's health issues to bolster his defense that his health problems had made him incapable of forming the required intent for embezzlement; (2) his counsel was ineffective for failing to seek financial records from Clayton Homes and other entities which might have indicated the whereabouts of the missing money; and (3) absent the alleged ineffectiveness of counsel, there was a reasonable possibility that the result of Defendant's trial would have been different.
IV. Standard of Review
To demonstrate an ineffective assistance of counsel claim, Defendant must show that his counsel's conduct fell below an objective standard of reasonableness. Strickland v. Washington , 466 U.S. 668, 688, 80 L.Ed. 2d 674, 693 (1984). Such a showing requires Defendant to satisfy the two-prong test announced by the Supreme Court of the United States in Strickland and adopted by our Supreme Court in State v. Braswell : (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. State v. Braswell , 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985).
The fact that counsel made an error, even an unreasonable error, does not warrant reversal of a conviction unless there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings. This determination must be based on the totality of the evidence before the finder of fact.
Id. at 563, 324 S.E.2d at 248 (internal citations omitted).
"[I]f a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient." State v. Harrison , 169 N.C. App. 257, 262, 610 S.E.2d 407, 411 (citation and quotation marks omitted), disc. review denied on additional issues , 360 N.C. 71, 622 S.E.2d 496 (2005), aff'd per curiam , 360 N.C. 394, 627 S.E.2d 461 (2006).
V. Analysis
A. Embezzlement
N.C. Gen. Stat. § 14-90 defines the offense of embezzlement and requires the State to present proof of the following essential elements: (1) that the defendant, being more than 16 years of age, acted as an agent or fiduciary for his principal, (2) that he received money or valuable property of his principal in the course of his employment and by virtue of his fiduciary relationship, and (3) that he fraudulently or knowingly misapplied or converted to his own use such money or valuable property of his principal which he had received in his fiduciary capacity.
State v. Rupe , 109 N.C. App. 601, 608, 428 S.E.2d 480, 485 (1993) (citations omitted). "The fraudulent intent required for embezzlement is defined as the intent to willfully and corruptly use or misapply another's property for purposes other than that for which it was held." State v. Morris , 156 N.C. App. 335, 340, 576 S.E.2d 391, 394 (internal quotations and citation omitted, cert. denied , 357 N.C. 510, 588 S.E.2d 379 (2003) ). The necessary intent "may be established by direct evidence or inferences from the facts and circumstances." State v. Minton , 223 N.C. App. 319, 322, 734 S.E.2d 608, 611 (2012), disc. review denied , 366 N.C. 587, 739 S.E.2d 845 (2013).
Nothing in the record on appeal shows any reasonable probability that defense counsel's purported failure to present expert testimony regarding Defendant's health issues or failure to obtain Clayton Homes' financial records would have affected the outcome of the trial, in light of the overwhelming evidence of Defendant's guilt. The State presented substantial evidence that although Defendant received large sums of cash from Ms. Mitchell and the Sessoms family in furtherance of purchasing land and mobile homes, Clayton Homes had no record of receiving the substantial portion of the missing cash.
B. Mitchell Transaction
The bank's video record shows, and Ms. Mitchell testified, that she gave cash directly to Defendant as an employee of Clayton Homes and was under the impression that she was paying for a tract of land, well, and septic system. She paid $10,000.00 to Defendant for the purchase of land and $5,085.00 for the well and septic system. Defendant offered Ms. Mitchell a purportedly lower price on the land if she paid him in cash. Defendant accompanied Ms. Mitchell to a bank that he specified for her to cash a check to pay in cash. Video surveillance from the bank showed Ms. Mitchell cashing a check and handing cash to Defendant. Defendant insisted that Ms. Mitchell also pay in cash when she paid for the well and septic system. While Ms. Mitchell repeatedly asked for receipts from Defendant, he never gave them to her. When Ms. Mitchell asked to see the folder of receipts for the money she had paid for her home, Defendant stopped answering Ms. Mitchell's numerous calls.
C. Sessoms Transaction
Ms. Sessoms testified that she had witnessed her brother and mother give Defendant three cash payments under the belief that the payments constituted a down payment on mobile homes and a payment towards an existing loan. The payments were $12,500.00, $8,273.00, and $1,000.00. When Ms. Sessoms requested receipts, Defendant provided her three hand-written receipts. After delays and lack of progress in obtaining the homes, Ms. Sessoms demanded that the cash paid to Defendant be returned to her family. Defendant responded that he did not have all of the money and needed time to get the money together.
Clayton Homes' regional vice president testified that it was the company's policy to deposit cash received within twenty-four business hours. However, with the exception of the cash found in the office's bathroom, both the regional vice president and Mr. Joyner testified that Clayton Homes had no record of receiving the cash payments that Ms. Mitchell and the Sessoms family gave to Defendant, and this cash was never found.
Mr. Joyner also testified that the type of receipts Defendant provided the Sessoms family was not the type that Clayton Homes normally provided, and he believed that they were "fraudulently created[.]" When Ms. Mitchell and Ms. Sessoms went to Mr. Joyner, Defendant's supervisor, after Defendant's refusal to answer calls and his statement that he no longer had the Sessoms' payment, Clayton Homes had record of only $1,000.00 of their payments.
D. Defendant's Health Issues
Although Defendant did not present expert testimony regarding Defendant's medical claims, the issue of Defendant's health problems and their effect on his ability to form intent was presented to the jury. The transcript demonstrates that defense counsel argued to the jury that due to Defendant's medical issues, he suffered from a decline in energy, his performance fell, and he had difficulty focusing at work. Defense counsel contended that because of these issues, Defendant was unable to intentionally convert the missing money to his own use.
Defense counsel also elicited testimony from Defendant and vigorously cross-examined the State's witnesses regarding this issue Defendant now claims an expert witness might have emphasized to the jury. Defendant testified that as a result of his health issues, he suffered from significant weight loss, confusion, and anger. Defense counsel asked Mr. Joyner if Defendant had memory problems due to his health issues and asked Clayton Homes' regional vice president if Defendant had shared information regarding his inability to remember.
VI. Conclusion
The State's evidence of Defendant's guilt, including evidence of multiple acts by Defendant in the course of his dealings with Ms. Mitchell and the Sessoms family, is sufficient to establish the required intent to sustain his conviction for embezzlement. We do not find that absent counsel's alleged errors, a different outcome would have resulted.
We conclude defense counsel's failure to call an expert witness or to obtain financial records from Clayton Homes and other entities did not render counsel's assistance constitutionally defective. Defendant received a fair trial free from prejudicial errors he preserved and argued. We find no error in the jury's verdict or in the judgment entered thereon. It is so ordered.
NO ERROR.
Report per Rule 30(e).
Judges BRYANT and ARROWOOD concur.